# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-4225

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FREDDIE J. BOOKER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03-CR-026-S-01—**John C. Shabaz**, *Judge.*

ARGUED JULY 6, 2004—DECIDED JULY 9, 2004

AMENDED JULY 12, 2004

Before POSNER, EASTERBROOK, and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.* A jury found the defendant guilty of possessing with intent to distribute at least 50 grams of cocaine base, for which the statute prescribes a minimum sentence of 10 years in prison and a maximum sentence of life. 21 U.S.C. § 841(b)(1)(A)(iii). At sentencing, the judge found by a preponderance of the evidence that the defendant (1) had distributed 566 grams over and above the 92.5 grams that the jury had to have found (for the defendant

did not contest that it was the amount of crack in his duffel bag—he just claimed he hadn't put it there) and (2) had obstructed justice. Under the federal sentencing guidelines, the additional quantity finding increased the defendant's base offense level from 32 to 36. U.S.S.G. §§ 2D1.1(c)(2), (4). The effect, together with that of the enhancement that the guidelines prescribe for obstruction of justice, U.S.S.G. § 3C1.1, was to place the defendant in a sentencing range of 360 months to life. The judge sentenced him to the bottom of the range. The appeal challenges the sentence on the ground that the sentencing guidelines violate the Sixth Amendment insofar as they permit the judge to find facts (other than facts relating to a defendant's criminal history) that determine the defendant's sentencing range. There is also a challenge to the conviction, based on the judge's limiting the scope of cross-examination, but so obviously harmless was that error (if it was an error) that we will move immediately to the sentencing issue.

We have expedited our decision in an effort to provide some guidance to the district judges (and our own court's staff), who are faced with an avalanche of motions for re-sentencing in the light of *Blakely v. Washington*, 2004 WL 1402697 (U.S. June 24, 2004), which has cast a long shadow over the federal sentencing guidelines. We cannot of course provide definitive guidance; only the Court and Congress can do that; our hope is that an early opinion will help speed the issue to a definitive resolution.

*Blakely* invalidates under the Sixth Amendment (which has of course long been held applicable to state criminal proceedings by an interpretation of the Fourteenth Amendment) a statute of the State of Washington that au-thorizes the sentencing judge to impose a sentence above the "standard range" set forth in the statute punishing the offense if he finds any aggravating factors that justify such

a departure; pursuant to this grant of authority, the judge had imposed a sentence of 90 months on the defendant, which exceeded the standard range of 49 to 53 months for his offense, second-degree kidnapping.

The Supreme Court had already held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). In *Blakely* the Court let the other shoe drop and held over pointed dissents that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely v. Washington, supra,* at *4. "In other words, the *relevant* 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority." *Id.* (citation omitted). "[W]ithout" is italicized in the original; we have italicized "relevant" to underscore the difference between the maximum sentence in the statute, and the maximum sentence—what the Supreme Court regards as the "relevant statutory maximum"—that the judge can impose without making his own findings above and beyond what the jury found or the defendant admitted or, as here, did not contest.

The maximum sentence that the district judge could have imposed in this case (without an upward departure), had he not made any findings concerning quantity of drugs or obstruction of justice, would have been 262 months, given the defendant's base offense level of 32, U.S.S.G. § 2D1.1(c)(4) (32 is the base offense level when the defen-

dant possessed at least 50 grams but less than 150 grams of crack), and the defendant's criminal history. U.S.S.G. §§ 4A1.1(a)-(e), 2(c)(1). True, that maximum is imposed not by the words of a federal statute, but by the sentencing guidelines. Provisions of the guidelines establish a standard range for possessing with intent to distribute at least 50 grams of cocaine base, and other provisions of the guidelines establish aggravating factors that if found by the judge jack up the range. The pattern is the same as that in the Washington statute, and it is hard to believe that the fact that the guidelines are promulgated by the U.S. Sentencing Commission rather than by a legislature can make a difference. The Commission is exercising power delegated to it by Congress, and if a legislature cannot evade what the Supreme Court deems the commands of the Constitution by a multistage sentencing scheme neither, it seems plain, can a regulatory agency. In its decision upholding the guidelines against delegation and separation of powers challenges, the Supreme Court had stated that "although Congress granted the Commission substantial discretion in formulating the guidelines, in actuality it legislated a full hierarchy of punishment—from near maximum imprisonment, to substantial imprisonment, to some imprisonment, to alternatives—and stipulated the most important offense and offender characteristics to place defendants within these categories" and that "in contrast to a court's exercising judicial power, the Commission is fully accountable to Congress, which can revoke or amend any or all of the Guidelines as it sees fit either within the 180-day waiting period or at any time." *Mistretta v. United States*, 488 U.S. 361, 377, 393-94 (1989) (citation omitted).

It would seem to follow, therefore, as the four dissenting Justices in *Blakely* warned, *Blakely v. Washington, supra*, at *16-17 (O'Connor, J., dissenting); *id.* at *29 (Breyer, J., dissenting); and several district judges have already ruled, e.g.,

*United States v. Croxford*, 2004 WL 1521560, at \*7, \*13 (D. Utah July 7, 2004); *United States v. Medas*, 2004 WL 1498183, at \*1 (E.D.N.Y. July 1, 2004); *United States v. Shamblin*, 2004 WL 1468561, at \*8 (S.D.W. Va. June 30, 2004), that *Blakely* dooms the guidelines insofar as they require that sentences be based on facts found by a judge. The majority in *Blakely*, faced with dissenting opinions that as much as said that the decision doomed the federal sentencing guidelines, might have said, no it doesn't; it did not say that.

The qualification "based on facts found by a judge" is critical. Nothing in *Blakely* suggests that Congress cannot delegate to the Sentencing Commission the authority to decree that possession with intent to distribute 658.5 grams of cocaine base shall be punished by a sentence of at least 360 months though the statutory minimum is only 10 years. All it cannot do under *Blakely* is take away from the defendant the right to demand that the quantity be determined by the jury rather than by the judge, and on the basis of proof beyond a reasonable doubt. The government argues that all the guidelines do is regularize the discretion that judges would exercise in picking a sentence within a statutory range. *Mistretta v. United States*, *supra*, 488 U.S. at 395. If that were indeed all, that would be fine. And indeed to a great extent the system of the guidelines, with its sentencing ranges and upward and downward departures, limits rather than extinguishes sentencing discretion. But the issue in *Blakely* was not sentencing discretion—it was the authority of the sentencing judge to find the facts that determine how that discretion shall be implemented and to do so on the basis of only the civil burden of proof. The vices of the guidelines are thus that they *require* the sentencing judge to make findings of fact (and to do so under the wrong standard of proof), e.g., 18 U.S.C. §§ 3553(a)(4), (5); U.S.S.G. §§ 1B1.1, .3(a), 6A1.3(b); *Edwards v. United States*, 523 U.S. 511, 513-14 (1998); *United States v. Bequette*, 309 F.3d 448,

450-51 (7th Cir. 2002); *United States v. Jackson*, 300 F.3d 740, 749 (7th Cir. 2002); *United States v. Guzman*, 318 F.3d 1191, 1197-98 (10th Cir. 2003); *United States v. Lopez*, 219 F.3d 343, 348 (4th Cir. 2000), and that the judge's findings largely determine the sentence, given the limits on upward and downward departures. 18 U.S.C. §§ 3553(b), (e), (f); U.S.S.G. § 5K2.0; *Koon v. United States*, 518 U.S. 81, 92, 96 (1996); *United States v. Sherman*, 53 F.3d 782, 788-89 (7th Cir. 1995); *United States v. Lafayette*, 337 F.3d 1043, 1052 (D.C. Cir. 2003); cf. *United States v. Cruz*, 317 F.3d 763, 766 (7th Cir. 2003). The finding of facts (other than the fact of the defendant's criminal history) bearing on the length of the sentence is just what the Supreme Court in *Blakely* has determined to be the province of the jury.

Of course, under almost any sentencing regime some residual discretion is vested in the sentencing judge; and to the extent that his exercise of discretion is influenced by the facts of the case—if only the facts that he may have gleaned concerning the defendant's character, remorse, health, and so on—judicial factfinding enters the sentencing process. But there is a difference between allowing a sentencing judge to consider a range of factors that may include facts that he informally finds—the pre-guidelines regime, under which "once it [was] determined that a sentence [was] within the limitations set forth in the statute under which it [was] imposed, appellate review [was] at an end," *Dorszynski v. United States*, 418 U.S. 424, 431 (1974), though sentences would occasionally be reversed because the district judge had relied on an impermissible consideration, e.g., *United States v. Maples*, 501 F.2d 985 (4th Cir. 1974), failed to exercise discretion, or based the sentence on false information, e.g., *Townsend v. Burke*, 334 U.S. 736, 741 (1948)—and commanding him to make factfindings and base the sentence (within a narrow band) on them. The latter is what Washington's sentencing guidelines did, and there is no

basis for thinking that *Blakely* would have been decided differently had the identical guidelines been promulgated, with the identical effect on sentences, by the Washington Sentencing Commission. The Court in *Blakely* was well aware of the difference, stating that factfinding by judges and parole boards under indeterminate sentencing regimes are permissible because "the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." *Blakely v. Washington, supra*, at *7 (emphasis in original).

It is tempting to think that maybe the guidelines can be saved by imagining the Sentencing Commission as a kind of superjudge who elaborates a code of sentencing principles much as a thoughtful real judge, operating in a regime of indeterminate sentencing, might do informally in an effort to make his sentences consistent. But the same reasoning would if accepted have saved Washington's sentencing guidelines, unless an administrative agency is to be deemed a more responsible, a more authoritative, fount of criminal law than a legislature. The four dissenting Justices in *Blakely* were unable to identify a meaningful difference between the Washington sentencing guidelines and the federal sentencing guidelines. A fifth Justice—Justice Scalia, the author of the majority opinion in *Blakely*—had dissented in *Mistretta* on the ground that the federal sentencing guidelines were indeed laws, not judicial pronouncements. *Mistretta v. United States, supra*, 488 U.S. at 413-27. And Justice Scalia, now speaking for a majority of the Court, in *Blakely*, though he replied to the dissenting Justices at length, did not say that they were wrong to suggest that the federal sentencing guidelines could not be distinguished from the Washington sentencing guidelines. Instead he said: "By reversing the judgment below, we are not, as the State would have it, 'find[ing] determinate sentencing schemes unconstitutional.'

This case is not about whether determinate sentencing is constitutional, only about how it can be implemented in a way that respects the Sixth Amendment." *Blakely v. Washington, supra,* at *7. No distinction between the Washington statute and other schemes of determinate sentencing, such as the federal sentencing guidelines on which the dissenting Justices had dwelled at such length, is suggested.

As an original matter, then, we think that the guidelines, though only in cases such as the present one in which they limit defendants' right to a jury and to the reasonable-doubt standard, and thus the right of defendant Booker to have a jury determine (using that standard) how much cocaine base he possessed and whether he obstructed justice, violate the Sixth Amendment as interpreted by *Blakely*. We cannot be certain of this. But we cannot avoid the duty to decide an issue squarely presented to us. If our decision is wrong, may the Supreme Court speedily reverse it.

We are mindful of the Supreme Court's ukase that the lower federal courts are not to overrule a Supreme Court decision even if it seems manifestly inconsistent with a subsequent decision, unless the subsequent decision explicitly overruled the earlier one. *State Oil Co. v. Khan,* 522 U.S. 3, 20 (1997). The government argues that the guidelines were upheld against a Sixth Amendment challenge in *Edwards v. United States, supra,* 523 U.S. at 515, and if this is right we shall have to affirm Booker's sentence whatever our independent view of the guidelines' consistency with *Blakely*. (The government also mentions *United States v. Watts,* 519 U.S. 148 (1997) (per curiam), a double-jeopardy case, and other Supreme Court decisions that rebuff various constitutional challenges to the guidelines—but not a Sixth Amendment challenge. Pre-*Blakely* decisions by lower federal courts rebuffing a Sixth Amendment challenge are of course no longer authoritative.) We do not think it is right.

None of the opinions in *Blakely* cites *Edwards*. The majority opinion states that "the Federal Guidelines are not before us, and we express no opinion on them," *Blakely v. Washington, supra*, at *6 n. 9; it does not state that they were upheld against a Sixth Amendment challenge in *Edwards* or any other case. (They were not, as we'll see.) When the Supreme Court says that it is not resolving an issue, it perforce confides the issue to the lower federal courts for the first pass at resolution.

The Court could have said in footnote 9 that the question whether to overrule *Edwards* was not before it. It did not say that. That is not surprising. The opinion in *Edwards* does not mention the Sixth Amendment or the constitutional right to a jury trial, and indeed states that "we need not, and we do not, consider the merits of petitioners' statutory and constitutional claims." 523 U.S. at 516. The Court did say that "petitioners' statutory and constitutional claims would make a difference if it were possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit for cocaine," *id.* at 515, which may mean that their constitutional claims (a mishmash of claims under different provisions of the Constitution, including however the Sixth Amendment) did not matter *because* the sentences did not exceed the statutory maximum. This was of course the understanding before *Blakely*, but *Blakely* redefined "statutory maximum." An assumption is not a holding.

The Court in *Edwards* was affirming a decision by this court, reported at 105 F.3d 1179 (7th Cir. 1997), which does not mention the Sixth Amendment or the constitutional right to a jury trial or any other constitutional issue. That would hardly have been oversight on the part of the opinion's author. The Supreme Court said that it was granting certiorari in *Edwards* to resolve a conflict over the question whether "the Sentencing Guidelines require the sentenc-

ing judge, not the jury, to determine both the kind and the amount of the drugs at issue in a drug conspiracy." 523 U.S. at 513. None of the other cases it cited for the existence of the conflict mentions the Constitution either. *United States v. Bounds*, 985 F.2d 188, 194-95 (5th Cir. 1993); *United States v. Pace*, 981 F.2d 1123, 1128-30 (10th Cir. 1992); *United States v. Owens*, 904 F.2d 411 (8th Cir. 1990).

And, finally, the petitioners in *Edwards* did not argue that the sentencing guidelines are unconstitutional. They did not say that the guidelines establish a sentencing structure that violates the Sixth Amendment. The most that can be dug out of their briefs, so far as bears on that issue, is that they were urging a statutory interpretation that would *avoid* a Sixth Amendment issue. The Court did not opine on the guidelines' consistency with the amendment because that consistency was not challenged. It did not rebuff a Sixth Amendment challenge to the guidelines because there was no Sixth Amendment challenge to the guidelines. We are obligated therefore to make our own constitutional determination.

We conclude that Booker has a right to have the jury determine the quantity of drugs he possessed and the facts underlying the determination that he obstructed justice. The judgment must therefore be reversed and the case remanded for resentencing. If the government does not object, the judge can simply sentence Booker to 262 months, since the choice of that sentence would not require any judicial factfinding. But if the government wants a higher sentence or unless, as explained below, the guidelines are not severable, then Booker, unless he strikes a deal with the government, will be entitled to a sentencing hearing at which a jury will have to find by proof beyond a reasonable doubt the facts on which a higher sentence would be premised. There is no novelty in a separate jury trial with regard to the sentence, just as there is no novelty in a bifurcated

jury trial, in which the jury first determines liability and then, if and only if it finds liability, determines damages. Separate hearings before a jury on the issue of sentence is the norm in capital cases.

Of course this will not work if the facts that the government would seek to establish in the sentencing hearing are elements of a statutory offense, for they would then have to be alleged in the indictment, and to re-indict at this stage would present a double-jeopardy issue. We can hardly attempt to resolve such issues on this appeal; the parties have not briefed or argued them. It would be doubly premature to address them, in light of the recent announcement by the Department of Justice that it believes that if *Blakely* is applicable to the guidelines, the "entire system" of the guidelines "must fall." "Departmental Legal Positions and Policies in Light of *Blakely v. Washington*," Memorandum to All Federal Prosecutors from James Comey, Deputy Attorney General of the United States, p. 3 (July 2, 2004). The Department may be right; the aspect of the guidelines that we believe to be unconstitutional, namely the requirement that the sentencing judge make certain findings that shall operate as the premise of the sentence and that he make them on the basis of the preponderance of the evidence, may not be severable from the substantive provisions of the guidelines. That is a question of legislative intent. *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 191 (1999). The practical effect just of upping the burden of persuasion in sentencing hearings will be to reduce the average sentence, and Congress might prefer a return to indeterminate sentencing (within the statutory ranges). In that event the guidelines would be invalid in their entirety, except, of course, as information that some judges would continue to give great weight to. But severability is another issue that has not been briefed or argued to us.

It might seem that if the substantive portions of the guidelines are not severable from the requirement that the judge find the facts relevant to the sentence, a 262-month sentence would be illegal. We do not think so. If the guidelines fall, the judge is free as he was before the guidelines were promulgated to fix any sentence within the statutory range, and the range for Booker, remember, is 10 years to life. Since the fall of the guidelines is a quite possible outcome, it would be prudent for the judge in any event to select a fall-back sentence.

To summarize: (1) The application of the guidelines in this case violated the Sixth Amendment as interpreted in *Blakely*; (2) in cases where there are no enhancements—that is, no factual findings by the judge increasing the sentence— there is no constitutional violation in applying the guidelines unless the guidelines are invalid in their entirety; (3) we do not decide the severability of the guidelines, and so that is an issue for consideration on remand should it be made an issue by the parties; (4) if the guidelines are severable, the judge can use a sentencing jury; if not, he can choose any sentence between 10 years and life and in making the latter determination he is free to draw on the guidelines for recommendations as he sees fit; (5) as a matter of prudence, the judge should in any event select a nonguidelines alternative sentence.

Because the government does not argue that Booker's Sixth Amendment challenge to the guidelines was forfeited by not being made in the district court, we need not consider the application of the doctrine of plain error, e.g., *United States v. Olano,* 507 U.S. 725, 731 (1993), to challenges inspired by the *Blakely* decision.

REVERSED AND REMANDED.

EASTERBROOK, *Circuit Judge*, dissenting. My colleagues hold that, after *Blakely v. Washington*, No. 02-1632 (U.S. June 24, 2004), judicial application of the Sentencing Guidelines violates the defendant's right to trial by jury under the sixth amendment. I disagree with that holding on both procedural and substantive grounds. This is the wrong forum for such a conclusion; and whatever power we may possess should not be exercised to set at naught a central component of federal criminal practice.

Procedure first. The Supreme Court alone is entitled to declare one of its decisions defunct. Even if later decisions wash away the earlier one's foundation, still the power to administer the coup de grâce belongs to our superiors. See, e.g., *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989). The alternative is bedlam—which is the likely consequence of today's decision. A court of appeals cannot replace the Guidelines with something else; the list of non-exclusive options at the end of the majority's opinion is our home-brewed formula, and other courts are bound to favor different recipes as 900 district and circuit judges fumble for solutions. The Supreme Court alone can make a definitive judgment.

In order to reach the result they do, my colleagues must conclude that *Edwards v. United States*, 523 U.S. 511 (1998), was wrongly decided. Our portfolio as intermediate judges in a hierarchical system does not include the authority to make such declarations. True enough, *Edwards* does not contain the phrase "sixth amendment." But an argument based on the sixth amendment was made to the Court: defendants insisted that, if the Guidelines and statutes were read as the United States and the Justices themselves did, that would deprive them of their right to a jury trial. The Court's opinion in *Edwards* acknowledged that constitutional contentions

had been advanced. *Edwards* held that a judge nonetheless may ascertain (using the preponderance standard) the type and amount of drugs involved, and impose a sentence based on that conclusion, as long as the sentence does not exceed the statutory maximum. According to my colleagues: "This was of course the understanding before *Blakely*, but *Blakely* redefined 'statutory maximum.' " Slip op. 8. Maybe so, but *if* so it is just a reason why *Edwards* is on its last legs. It does not imply that we are entitled to put it in a coffin while it is still breathing.

Just as opera stars often go on singing after being shot, stabbed, or poisoned, so judicial opinions often survive what could be fatal blows. Think of *Lemon v. Kurtzman*, 411 U.S. 192 (1973), which is incompatible with later decisions, has been disparaged by most sitting Justices, yet has not been overruled. Closer to the mark is *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), decided one month before *Edwards* and, like it, in tension with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), on which *Blakely* rests. *Almendarez-Torres* holds that juries need not be asked to determine a defendant's criminal history even for purposes of recidivist statutes that use convictions to increase the maximum sentence. Four Justices, dissenting in *Almendarez-Torres*, made the arguments that were to carry the day two years later in *Apprendi*, when they were joined by Justice Thomas, who had been in the *Almendarez-Torres* majority. See 523 U.S. at 248-71 (Scalia, J., joined by Stevens, Souter & Ginsburg, JJ., dissenting). Justice Thomas wrote that he now considers *Almendarez-Torres* wrongly decided. *Apprendi*, 530 U.S. at 518-21 (Thomas, J., concurring). One might think *Almendarez-Torres* doomed, but it has not been overruled, and *Blakely* repeats a formula that carves out recidivist enhancements. We routinely apply *Almendarez-Torres*, saying that its fate rests with the Supreme Court alone. *Edwards* should receive the same treatment.

To support the view that *Edwards* no longer is authorita-
tive, the majority notes that none of the opinions in *Blakely*
cited it. Why would it pass without mention if it is a (logical)
casualty of *Blakely*? Well, one reason could be that *Edwards*
is *not* a logical casualty; that's the substantive question I
discuss later. The other is that the question was left unde-
cided. *Blakely* tells us: "The United States, as *amicus curiae*,
urges us to affirm. It notes differences between Washington's
sentencing regime and the Federal Sentencing Guidelines
but questions whether those differences are constitutionally
significant. See Brief for United States as *Amicus Curiae*
25-30. The Federal Guidelines are not before us, and we ex-
press no opinion on them." Slip op. 9 n.9. Having dis-
claimed views about the Guidelines, the Justices had no
occasion to parse *Edwards*. I find it odd that my colleagues
should focus on what the Court did *not* do (cite *Edwards*)
while slighting what it *did* do (declare that analysis of the
federal Guidelines is a different kettle of fish). What's more,
although the Court did not attend to *Edwards* in *Blakely*, it
did so in *Apprendi* itself, writing:

> The principal dissent . . . treats us to a lengthy disquisi-
> tion on the benefits of determinate sentencing schemes,
> and the effect of today's decision on the federal
> Sentencing Guidelines. *Post*, at 544-552. The Guidelines
> are, of course, not before the Court. We therefore express
> no view on the subject beyond what this Court has al-
> ready held. See, *e.g.*, *Edwards v. United States*, 523 U.S.
> 511, 515 (1998) (opinion of Breyer, J., for a unanimous
> court) (noting that "[o]f course, petitioners' statutory and
> constitutional claims would make a difference if it were
> possible to argue, say, that the sentences imposed
> exceeded the maximum that the statutes permit for a
> cocaine-only conspiracy. That is because a maximum
> sentence set by statute trumps a higher sentence set forth

in the Guidelines. [United States Sentencing Commission, Guidelines Manual § 5G1.1 (Nov. 1994)]").

530 U.S. at 497 n.21. So the Justices see the links connecting the sixth amendment, *Apprendi, Edwards*, statutory maximums, and the federal Sentencing Guidelines. It is for them, not us, to say that as a result of *Blakely* this linkage scuttles *Edwards*. (Other casualties of the majority's approach are *United States v. Watts*, 519 U.S. 148 (1997), which holds that a judge may increase a sentence based on relevant conduct of which the defendant had been acquitted by the jury, and *United States v. Dunnigan*, 507 U.S. 87 (1993), which holds that to decide whether the defendant receives a higher sentence for obstructing justice the judge may (indeed must) decide independently of the jury whether the defendant committed perjury at trial. See also *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), which *Blakely* distinguished, but which on my colleagues' view is a dead letter.)

Now to substance. *Apprendi* establishes, 530 U.S. at 490, and *Blakely* reiterates, slip op. 5, this rule: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Shortly after *Apprendi* was released, we held that the "statutory maximum" means whatever statutory criteria make a person eligible for a given punishment. Consider 21 U.S.C. §841, which establishes three maximums for cocaine-distribution offenses: distribution of any quantity permits a sentence up to 20 years (§841(b)(1)(C)); distribution of more than 500 grams (or 5 grams of cocaine base) raises the maximum to 40 years (§841(b)(1)(B)(i), (iii)); distribution of more than 5 kilograms (or 50 grams of cocaine base) raises the statutory maximum to life (§841(b)(1)(A)(i), (iii)). In *United States v. Nance*, 236 F.3d 820, 824-25 (7th Cir. 2000), we held that the thresholds (500 grams and 5 kilograms)

must be charged in the indictment and established beyond a reasonable doubt to the jury's satisfaction (if the defendant does not waive jury trial or admit the quantities). Otherwise the maximum is 20 years. Once the trier of fact has determined that the defendant distributed at least 500 grams or 5 kilograms, the sixth amendment has been satisfied and choosing a sentence below the statutory limit is for the judge alone, on the preponderance of the evidence. See, e.g., *Talbott v. Indiana*, 226 F.3d 866, 869-70 (7th Cir. 2000).

*Blakely* is the Supreme Court's analog to *Nance*. Just as §841 provides a maximum of life imprisonment for distributing cocaine only if the defendant distributed at least 5 kilograms (or 50 grams of cocaine base)—otherwise the maximum is 20 or 40 years—so Washington establishes a 10-year maximum sentence for second-degree kidnapping, but (according to a second statute) only if the defendant acted with "deliberate cruelty"—otherwise the maximum is 3 years. Washington contended that the relevant "statutory maximum" was 10 years; this is equivalent to arguing that the "statutory maximum" in *all* federal cocaine prosecutions is life. The Court disagreed and held that the relevant "statutory maximum" is the lowest of all arguably pertinent statutory caps, unless the jury makes the finding that raises the limit.

According to my colleagues, *Blakely* goes beyond what was necessary to decide the validity of Washington's system by giving this definition of "statutory maximum":

> In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," . . . and the judge exceeds his proper authority.

Slip op. 7 (emphasis in original). I do not see here the star-
tling consequences my colleagues find. This says exactly
what we held in *Nance*: one must start with the lowest stat-
utory maximum and ask the jury to make findings that raise
the sentence to which the defendant is exposed.

*Blakely* arose from a need to designate one of two statutes
as the "statutory maximum". Washington called its statutes
"sentencing guidelines," but names do not change facts.
Nonetheless, the reading my colleagues give to this passage
is that it does not matter whether the maximum is statutory;
any legal rule, of any source (statute, regulation, guideline)
that affects a sentence must go to a jury. Certainly *Blakely*
does not hold that; it *could not* "hold" that given that it dealt
with statutes exclusively. Attributing to *Blakely* the view that
it does not matter whether a given rule appears in a statute
makes hash of "statutory maximum." Why did the Justices
deploy that phrase in *Apprendi* and repeat it in *Blakely* (and
quite a few other decisions)? Just to get a chuckle at the
expense of other judges who took them seriously and
thought that "statutory maximum" might have something
to do with statutes? Why write "statutory maximum" if you
mean "all circumstances that go into ascertaining the proper
sentence"?

Going *Blakely* one better, today's majority says that as a
matter of constitutional law there *cannot* be any difference
between statutes and other sources of rules: "it is hard to
believe that the fact that the guidelines are promulgated
by the U.S. Sentencing Commission rather than by a legi-
slature can make a difference. The Commission is exercising
power delegated to it by Congress, and if a legislature
cannot evade what the Supreme Court deems the commands
of the Constitution by a multistage sentencing scheme
neither, it seems plain, can a regulatory agency." Slip op.
3-4. For the vital proposition that anything functionally

equivalent to a statute (from the perspective of a criminal defendant) must be treated *as* a statute, the majority cites— nothing. Phrases such as "it seems plain" are poor substitutes for authority in the Constitution's text or interpretive history.

The majority's proposition is refuted by *Blakely* itself, which tells us that legislatures *may* delegate such issues to the judiciary and parole boards without offending the sixth amendment. The Court considered whether there would be a constitutional problem with open-ended sentencing, such as a statute allowing any person convicted of burglary to be sentenced to any term of years up to 40. *Blakely*, slip op. 12-14. If the law left that decision to the judiciary, the court said, there would be no problem even if the sentencing judge applied (as a matter of common law) the rule "10 years unless the burglar uses a gun; if a gun, then 40 years." Put that algorithm in a statute and the sixth amendment commits to the jury the question whether the burglar was armed; put the same algorithm in a judicial opinion and the sixth amendment allows the judge to make the decision. The Court saw this not as an "evasion" but as a natural application of the Constitution.

"Statutory" in the phrase "statutory maximum" is not an inept shorthand. *Apprendi* and *Blakely* hold that the sixth amendment allocates to the jury all elements of the offense, plus all statutory details that are enough like elements that differences in phraseology should not be allowed to affect the defendant's rights. Example: the statutory quantity thresholds in §841 are not "elements" of that offense, see *United States v. Bjorkman*, 270 F.3d 482 (7th Cir. 2001), because a low quantity does not lead to acquittal; distributing any detectable quantity is a criminal offense. But the statute works much as if Congress had enacted multiple degrees of a crime. Just as the distinctions between manslaughter and

first-degree murder (such as malice aforethought) must be proved to a jury's satisfaction, so the distinctions between simple and aggravated distribution must be shown. *Blakely* treated Washington as having established three degrees of kidnapping: the distinction between second- and third-degree kidnapping was deliberate cruelty. Having embedded this distinction in its statute books, the Court held, Washington could not cut the jury out of the process. This understanding of the sixth amendment has *nothing* to do with sentencing if there is only one degree of an offense (the Court's example of burglary with a 40-year maximum), or if the defendant has been convicted of the highest degree. Booker has been convicted of "cocaine distribution in the first degree" and the jury's verdict authorizes life imprisonment. What happens after that is unrelated to the sixth amendment. This is why the rule of *Apprendi* and *Blakely* is confined to statutes, why they do not affect statutory minimum sentences, see *Harris v. United States*, 536 U.S. 545 (2002), why regulations and guidelines that affect sentencing after the "degree" of an offense has been fixed by the jury do not transgress the limits set by the sixth amendment, and why (capital punishment aside) *Apprendi* and *Blakely* are irrelevant if the jury's verdict authorizes life imprisonment. See *United States v. Smith*, 223 F.3d 554 (7th Cir. 2000).

Think of the indeterminate sentence: zero-to-life with release in the discretion of parole officials. The federal Parole Commission eventually developed a set of release guidelines designed to ensure consistent treatment of offenders. See *United States v. Addonizio*, 442 U.S. 178 (1979). Parole-release guidelines might say something like: "Hold bank robbers in prison for 10 years; hold armed bank robbers for 20; hold armed bank robbers who discharge their weapons or take hostages for 30; add (or subtract) time from these presumptive numbers to reflect the size of the heist." If my colleagues are right, then such a system violates the sixth

amendment. Yet the Justices do not think this a problem, as parole and other forms of executive clemency don't affect the degree of the offense and therefore do not undercut the jury's role. See *Blakely*, slip op. 13. If parole regulations are valid, why not the federal Sentencing Guidelines? How could commissioners, but not judges, be free to apply regulations that depend on how much cocaine the defendant distributed, or whether he pulled a gun on the teller? Once the jury has determined the degree (and the statutory consequences) of the offense, both judges and executive officials constitutionally may take part in determining how much of the statutory maximum the defendant serves in prison.

One other point about the federal sentencing guidelines: Given the matrix-like nature of the system and the possibility of departure, see 18 U.S.C. §3553(b); U.S.S.G. §5K2.0; *Koon v. United States*, 518 U.S. 81 (1996), the only finding that is *indispensable* to Booker's sentence is the one specified by statute: did he distribute more than 50 grams of cocaine base? The jury found beyond a reasonable doubt that he had. Where in the resulting statutory range of 10 years to life the actual sentence falls depends on complex interactions among drug quantity, gun use, violence, role in the offense (was defendant the mastermind or just a courier?), cooperation, obstruction of justice, criminal history, and other factors, none of which is a sine qua non in the same sense as the statutory thresholds. See U.S.S.G. §2D1.1 (21 pages long and just a starting point; later chapters provide many adjustments). No answer to the question "what was the total quantity?" gives any defendant a legal entitlement to a particular sentence. Lower quantities of drugs can be counterbalanced by a longer criminal history or a more senior role in the offense, or the judge may decide that upward departure is appropriate. Even if *Blakely*'s definition reaches regulations adopted by a body such as the

Sentencing Commission, it requires an extra step (or three) to say that the jury must make the dozens of findings that matter to the Guidelines' operation in each case.

*Apprendi* and *Blakely* hold that the sixth amendment commits to juries all statutory sentencing thresholds. Perhaps the Court eventually will hold that some or all of the additional determinations that affect sentences under the federal Sentencing Guidelines also are the province of jurors. But *Blakely* does not take that step, nor does its intellectual framework support it—and *Edwards* holds that the current structure is valid provided that juries make all decisions that jack the maximum sentences. I would treat *Blakely* as holding that, when there are multiple statutory caps, the "statutory maximum" is the lowest one and the jury must determine whether statutory thresholds to increased ranges have been satisfied. To read more into *Blakely* is to attribute to that opinion something beyond its holding, and to overthrow the real holdings of other decisions.

Today's decision will discombobulate the whole criminal-law docket. I trust that our superiors will have something to say about this. Soon.


A true Copy:
        Teste:


                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*