UNITED STATES of America,

v.

**Maurice Pernell McKINNEY, Defendant.**

No. 4:04CR3–RH/WCS.

United States District Court, N.D. Florida, Tallahassee Division.

Sept. 6, 2004.

that Aird was responsible for at least 150 kilograms of cocaine. (*See* July 1 Order, at 5.)

**1316**

George Abney, US Attorney, Tallahassee, FL, for Plaintiff.

## STATEMENT OF REASONS

HINKLE, District Judge.

This case presents the issue whether the constitutional principle announced in

*Blakely v. Washington,* — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), applies to the federal sentencing guidelines and, if so, how sentencings are to be conducted to avoid violating that constitutional principle. As set forth on the record of the sentencing hearing, I conclude that *Blakely* applies to the federal sentencing guidelines and that, as a result, courts should consider, but are not bound by, the guidelines. This order summarizes the basis for this conclusion. No purpose would be served by addressing the issue more comprehensively; many other courts already have done so, reaching differing conclusions,[1] and the United States Supreme Court will resolve the matter soon.[2] Indeed, after this statement of reasons was prepared (in all respects save this sentence and the accompanying footnote), but before it was issued, the United States Court of Appeals for the Eleventh Circuit addressed this same issue, rendering this court's analysis superfluous except as an explanation to these parties of the basis for the sentence that was imposed in this case.[3]

1. *Compare, e.g., United States v. Booker,* 375 F.3d 508 (7th Cir.2004) (holding federal sentencing guidelines unconstitutional under *Blakely*), *cert. granted,* — U.S. —, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004); *United States v. Ameline,* 376 F.3d 967 (9th Cir.2004) (holding *Blakely* applies to federal sentencing guidelines but unconstitutional aspects are severable); *and Fanfan v. U.S.,* No. 03–47–P–H, 2004 WL 1723114 (D.Me.2004), *petition for cert. before judgment granted,* — U.S. —, 125 S.Ct. 12, 159 L.Ed.2d 838 (2004), *with, e.g., United States v. Pineiro,* 377 F.3d 464 (5th Cir.2004) (holding that *Blakely* does not apply to the federal guidelines unless and until the Supreme Court so rules), and *United States v. Mincey,* 380 F.3d 102 (2d Cir.2004) (same but directing withholding of mandates pending Supreme Court decisions in *Booker* and *Fanfan* ).

2. Oral argument on the issue of whether and, if so, how *Blakely* applies to the federal sentencing guidelines has been scheduled for Oc-

tober 4, 2004, in *Booker* and *Fanfan.* See *supra* note 1.

3. The sentencing hearing in this case was conducted after *Blakely* but before the Eleventh Circuit held in *United States v. Reese,* 382 F.3d 1308 (11th Cir.2004), that the *Blakely* rule does not apply to the federal sentencing guidelines. The sentence as imposed in the case at bar—and as explained in this statement of reasons—runs afoul of *Reese.* Under 18 U.S.C. § 3582 and § 3742, the sentence cannot now be corrected by this court; the sentence is subject to review only on appeal. If *Reese* survives the Supreme Court's decisions in *Booker* and *Fanfan,* the decision in this case will properly be reversed, based on *Reese.* This statement of reasons has nonetheless been issued as an explanation to the parties of the decision that was made based on the law as it existed at the time of the sentencing hearing. My intention to issue this statement of reasons was announced at the sentencing hearing.

## I

Defendant pled guilty to possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(b)(1)(C) (count 2), possession of a firearm in furtherance of the drug offense in violation of 18 U.S.C. § 924(c) (count 3), and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 924(e) (count 5). Under the guidelines, counts 2 and 5 were grouped, and the range was 210 to 262 months. The minimum mandatory sentence on count 5 was 180 months.[4] On count 3, the guidelines called for imposition of the minimum mandatory sentence—either 60 months (if defendant possessed only one of the firearms at issue, a .38 revolver) or 120 months (if defendant also possessed the other firearm at issue, an assault weapon). The sentence on count 3, whether 60 or 120 months, was required by statute to run consecutively to the sentence on the other counts.

I found as a fact, over defendant's objection and without a jury, that defendant possessed in furtherance of the drug offense not only the .38 but also the assault weapon. Both weapons were between the front seats in the car defendant drove to at least two drug transactions, and although defendant did not own the guns or bring them into the car, they were within his reach, available for his protection, and he knew they were there. My finding was that defendant possessed both guns in furtherance of the drug offense.

Based on this finding, the minimum mandatory sentence (and therefore the guidelines sentence) on count 3 was 120 months. The combined minimum mandatory on counts 3 and 5 was 300 months. The aggregate guidelines range for all counts was 330 to 382 months.

4. This was the minimum because defendant had two or more prior convictions of crimes

## II

In *Blakely,* the Supreme Court said:

This case requires us to apply the rule we expressed in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000): "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." ...

. . . . .

... Our precedents make clear ... that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. See Ring* [*v. Arizona,* 536 U.S. 584,] 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 [ (2002) ] (" 'the maximum he would receive if punished according to the facts reflected in the jury verdict alone' " (quoting *Apprendi, supra,* at 483, 120 S.Ct. 2348)); *Harris v. United States,* 536 U.S. 545, 563, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality opinion) (same); cf. *Apprendi, supra,* at 488, 120 S.Ct. 2348 (facts admitted by the defendant). In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," [1 J.] Bishop, [Criminal Procedure,] § 87, at 55 [ (2d ed. 1872) ], and the judge exceeds his proper authority.

of violence, rendering him an "armed career criminal" under § 924(e).

*Blakely,* —— U.S. at ——–——, 124 S.Ct. at 2536–37 (emphasis in original).

There is no reasonable way to read this language as not applicable to the federal sentencing guidelines. That this is so is confirmed both by the *Blakely* Court's framing of the question—the definition of the statutory maximum for *Apprendi* purposes—and from the language in which the Court answered the question.

So far as I am aware, every court that has addressed the matter, including the Supreme Court, has applied *Apprendi* to federal as well as state cases. Thus, for example, as a result of *Apprendi,* drug quantities (at least to the extent they affect the maximum sentence permissible under the governing drug statutes themselves) have been submitted to the jury, without objection from the government. This is hardly surprising: the Sixth Amendment, on which *Apprendi* is based, of course applies to federal as well as state cases.[5]

Thus when the Court articulated the issue in *Blakely* as the definition of the statutory maximum for *Apprendi* purposes, nobody could reasonably assert that this meant a definition that would apply only in state cases. Nor did the Court's formulation suggest any basis for differentiating state from federal cases; the Court simply spoke of the meaning of the statutory maximum "for *Apprendi* purposes." The Court's answer to the question, too, spoke in terms drawing no distinction between federal and state cases. The Court could not have chosen its definition inadvertently, without realizing its import, nor could the Court inadvertently have omitted any limitation on the definition to cases arising in state court.

It is clear, therefore, that the "statutory maximum" for *Apprendi* purposes, in federal as in state cases, is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."* *Blakely,* —— U.S. at ——, 124 S.Ct. at 2537 (emphasis in original). Under this plain language, the approach that long has been taken under the federal sentencing guidelines is invalid.

The government asserts, however, that earlier Supreme Court decisions are inconsistent with this reading of *Blakely,* and that if those earlier decisions are to be overruled, the Supreme Court, not this court, must do the overruling. It of course is true that only the Supreme Court may overrule Supreme Court decisions. But this principle does not help the government here, for two reasons.

First, there is undoubtedly tension between *Blakely* and earlier Supreme Court decisions that apply the federal guidelines and uphold them against constitutional attack. *See, e.g., United States v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997); *Witte v. United States,* 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995); *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). This did not escape the notice of the dissenters in *Blakely, see Blakely,* —— U.S. at ——, 124 S.Ct. at 2548 (O'Connor, J., dissenting), nor, one is confident, of the majority. The short answer is that the majority in *Blakely* found the argument that those earlier decisions compelled a different result unavailing. If the Supreme Court itself concluded those decisions did not foreclose the rule it an-

---

5. In this district, the government has not only not objected; the government has affirmatively *requested* that drug type and quantity (to the extent they affect the maximum sentence authorized under the drug statutes themselves) be submitted to the jury. This is a clear recognition of the rather obvious proposition that *Apprendi* applies to federal cases.

nounced in *Blakely,* I am bound by that conclusion. I am not free to ignore the *Blakely* rule on the ground that the Supreme Court had it wrong and that its earlier decisions in fact are inconsistent with the rule announced in *Blakely.*

Second, while it is true that only the Supreme Court can overrule its own decisions, that does not mean that lower courts cannot read those decisions—all of them— to determine what they mean. *Blakely* is the first and only case in which the Supreme Court has squarely addressed the issue of whether it violates the Sixth Amendment right to a jury trial for a judge to impose a sentence in excess of the sentence that lawfully could be imposed under applicable sentencing guidelines *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. Blakely* held imposition of such a sentence to violate the Sixth Amendment right to a jury trial. No other Supreme Court decision has squarely addressed the issue. The Supreme Court precedent on this issue that is binding on this court thus is *Blakely*—not earlier decisions that do not squarely address this issue (and that the Supreme Court itself, in *Blakely,* held not controlling).

### III

It perhaps bears noting that this is not a decision I come to lightly, nor one that I would make if not bound. If I wrote on a clean slate, I would uphold the guidelines against Sixth Amendment attack.[6]

Since the very first days of indeterminate sentencing, judges have taken into account, in choosing a sentence, information not established by a jury's verdict nor admitted by the defendant. The *Blakely* majority acknowledged this, at least to some extent, *see Blakely,* —— U.S. at ——, 124 S.Ct. at 2540, and nobody who has participated in the federal sentencing process reasonably could deny it. The advent of sentencing guidelines thus diminished the jury's role not a whit; under guidelines schemes, as before, the jury determines guilt or innocence, and additional facts may be considered in determining the sentence.

Sentencing guidelines did, however, reallocate the decision making authority as between the judge and the legislative branch, limiting the discretion of the former, and giving greater sway to policy decisions of the latter. One can argue the wisdom of guidelines sentencing in general or of the specific decisions incorporated into the existing federal guidelines in particular, but it is hard to find support for the proposition that the Constitution requires the legislature to cede policy making authority in this arena to judges. It is harder still to argue that this must be done in the name of preserving the role of the *jury.*[7]

---

**6.** This is not a comment on the wisdom of guidelines sentencing or on the specifics of the federal sentencing guidelines. Those are matters for Congress. This is, instead, an expression of the view of constitutional law that I would adopt, but for the Supreme Court's *Blakely* decision. I deem it appropriate to include this discussion as part of the explanation of what did—and did not—contribute to the result in this case.

**7.** In responding to the dissent's suggestion along these lines, the *Blakely* majority seemingly acknowledged that, under traditional indeterminate sentencing, a sentence often was higher, based on facts found by the judge, than the sentence otherwise would have been. But the majority said such factfinding did not increase the maximum sentence that *could have been* imposed; this, the majority said, "makes all the difference." *Blakely,* —— U.S. at ——, 124 S.Ct. at 2540. This is where the horse was buried. The majority never explained why what *could have been* should be controlling, nor why it should matter, for Sixth Amendment purposes, whether judicial factfinding increases a sentencing *range,* rath-

*Blakely* supports its conclusion in part by saying there is no other bright line rule on this issue than that adopted by the majority, and belittling the dissent's purported alternative standard that "tail shall not wag dog." *Blakely*, —— U.S. at —— n. 13, 124 S.Ct. at 2542 n. 13. But constitutional adjudication has never been as easy as drawing bright lines and boring full speed ahead; sometimes fine judgments are required. If the decision were mine, I would recognize the authority of Congress to put in place a guidelines sentencing scheme based on facts found by judges. I would do this confident that if, in one or a few cases, Congress or the United States Sentencing Commission or a state legislature (or a judge) truly tried to deprive a defendant of his or her right to a jury trial on guilt or innocence by moving the real guilt or innocence issues to the sentencing phase, a judge (or an appellate court) would enforce the Sixth Amendment.[8]

But the *Blakely* majority took a different tack, and it is the view of that majority that now controls.[9]

## IV

■ The conclusion that *Blakely* applies to the federal sentencing guidelines means that those guidelines cannot constitutionally operate as designed. The statute and the guidelines clearly contemplate, both by their language and their structure, that judges will increase offense levels based on facts that were neither inherent in any verdict nor admitted by the defendant. Under *Blakely*, this is improper.

The issue then, is what if anything remains of the guidelines. This is an issue of severability that ultimately turns on an analysis of congressional intent. *See generally Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987) ("Congress could not have intended a constitutionally flawed provision to be severed from the remainder of the statute if the balance of the legislation is incapable of functioning independently"); *Hill v. Wallace*, 259 U.S. 44, 70–72, 42 S.Ct. 453, 458–459, 66 L.Ed. 822 (1922)

---

er than just a sentence itself. More time in prison as a result of judicial factfinding is more time in prison, and, in my view and one suspects the view of the defendant, it is *that* that should "make[ ] all the difference." The closest the majority came to explaining its view on this was a reference to what a burglar knows about the sentence he is facing when he enters a house; the majority said that under indeterminate sentencing, the burglar may know he faces 40 years, while under guidelines, he may know he faces only 10 years, unless he carries a gun, in which case he may face 40 years. This assumes extraordinary knowledge on the part of the burglar, who in the real world usually will know nothing of the maximum sentence or the guidelines. But even assuming a burglar with perfect knowledge, the majority does not explain why it is constitutionally unacceptable for the burglar to know he faces a statutory maximum of 40 years and will be sentenced under guidelines that confine the judge's discretion based on facts that will be found by the judge.

8. *Apprendi* and *Blakely*, on their facts, are both cases in which the state courts may have gone too far—in *Apprendi* by moving to the sentencing phase a charge that on any reasonable view was a separate crime, and in *Blakely* by backtracking on a plea agreement and in effect sentencing the defendant (without any request by the prosecutor) on a charge the prosecutor bargained down. This does not, however, diminish the force of the Supreme Court's decisions in *Apprendi* and *Blakely*; the Supreme Court does not sit to correct mere errors of state courts, and the Supreme Court's opinions foreclose any attempt to confine the decisions to their facts.

9. Because the *Blakely* rationale is subject to debate, it is impossible to predict with confidence whether all members of the majority will adhere to that rationale when the issue again is presented in *Booker* and *Fanfan*. *See supra* note 2. But unless and until the Supreme Court itself retreats from *Blakely*, I will apply the decision as written.

(holding Future Trading Act nonseverable because valid and invalid provisions were so intertwined that the Court would have to rewrite the law to allow it to stand); *see also* 18 U.S.C. § 3553 (setting forth procedures for imposition of sentence and containing no severability or savings clause relating to the federal sentencing guidelines)

One way of dealing with this would be to retain the guidelines in their current form but to submit to a jury all factual issues on which any adjustment to the offense level might be based. This would be a drastic change to the system Congress adopted and would conform to the intent neither of Congress nor of the Sentencing Commission. And as a practical matter, submitting such issues to a jury would be a nightmare. *See, e.g., United States v. Medas,* 323 F.Supp.2d 436, 438–45 (E.D.N.Y. 2004) (setting forth government's proposed verdict form consisting of 20 pages and totaling 38 questions of a type clearly not appropriate for submission to a jury). This is not the appropriate outcome.

A second approach—one advocated by many defendants—would be to apply the guidelines in all cases, but to ignore upward adjustments based on facts that are neither inherent in a verdict nor admitted by the defendant. This would lead to sentences that nobody intended and nobody thinks fair. For example, a teller who takes $100 from the till at the bank would face the same sentencing range as a person who bilks thousands of investors of millions of dollars and causes the collapse of a financial institution. *See* U.S. Sen-

tencing Guidelines Manual § 2B1.1 (2003).[10] This is not the appropriate application of *Blakely.*

Another approach would be to apply the guidelines in some cases, but not others, depending on whether the guidelines do or do not provide for fact-based adjustments in the particular case, or on whether the defendant did or did not admit the facts at issue. This would not, however, be consistent with the congressional goal of eliminating unwarranted sentencing disparities. Indeed, applying *Blakely* to remove many cases—probably a majority—from the guidelines regimen, while leaving the guidelines intact in other cases, would promote, rather than reduce, sentencing disparity. And there would be no rational distinction between those cases that would and would not be governed by the guidelines.

That this conclusion is correct is confirmed by how unworkable it would be to try to distinguish cases to which the guidelines would and would not still apply under a case-by-case approach to *Blakely.* The case at bar provides an illustration. Defendant's "maximum sentence" (that is, the highest sentence he could receive under the guidelines) for possession of a firearm (count 3) was either 60 or 120 months consecutive, depending on whether defendant possessed an assault weapon. Under *Blakely,* increasing the guidelines range based on a finding by the judge on this issue would be improper. So a case-by-case approach would put this case in the category not governed by the guidelines, unless, that is, defendant waived the issue.[11]

---

**10.** This would not be the case, of course, if the defendant admitted the circumstances on which upward adjustments would be based. But someone facing a guidelines range of many years based on the actual facts, but who could be assured a range of zero to six months by keeping quiet, would almost surely

keep quiet. Particularly in light of recent congressional enactments increasing the penalties for offenses of this type, it is clear that this does not square with congressional intent.

**11.** When defendant entered his guilty plea, he agreed the assault weapon issue could be

 If defendant waived the *Blakely* issue with respect to the assault weapon, then this case would provide an even better illustration of the unworkability of a case-by-case approach to *Blakely*. Defendant received a two-level reduction for acceptance of responsibility, rather than a three-level reduction, because he pled guilty at the eleventh hour. Defendant did not contest denial of the third point. But he of course could have contested it (albeit unsuccessfully), simply by saying he objected. His overall range would have been 308 to 355 months with a three-level reduction, but the range was 330 to 382 with a two-level reduction. According to *Blakely*, defendant's "statutory maximum" for *Apprendi* purposes—355 or 382 months—depended on facts (the timeliness of his guilty plea, or perhaps other circumstances as set out in Guidelines § 3E1.1). Under *Blakely*, these are facts that must be found by a jury, unless admitted by the defendant.[12] To take himself out from under the guidelines, defendant would have needed only to contest those facts. He would have needed no real basis for doing so—a defendant's right to trial by jury cannot be denied on the ground the actual facts are clear. So the approach of holding the guidelines applicable in some cases, but not others, would in effect give the defendant an option, in almost every case (including the case at bar), either to proceed under, or outside of, the guidelines. This would make no sense.

 I conclude that the guidelines must stand or fall as a whole, and that under *Blakely*, they must fall.

 This does not mean, of course, that the guidelines should be ignored. To the contrary, the guidelines represent the considered wisdom of the Sentencing Commission, based on its study of thousands of prior sentences and molded to reflect the Commission's reading of congressional policy. Considering the views of the Sentencing Commission can and should be done.[13]

## V

 In determining the sentence in this case, I considered the sentencing guidelines, the statutory minimum mandatory sentences, and all of the sentencing factors set forth in 18 U.S.C. § 3553(a). I imposed a total sentence of 300 months, consisting of 180 months concurrent on counts 2 and 5 and 120 months consecutive on

---

resolved by the judge. But defendant made this agreement before the Supreme Court decided *Blakely*. At that time, there seemed to be no Sixth Amendment bar to this procedure; the maximum sentence authorized by the statute of conviction, without regard to the guidelines, was life, whether defendant possessed only the .38 (as he claimed) or also the assault weapon (as the government claimed). *Apprendi* had been held inapplicable to facts affecting only the guidelines range or any minimum mandatory but not affecting the statutory maximum (as determined without regard to the guidelines).

12. To be sure, some have suggested that the *Blakely* principle applies only to *increases* in the offense level, not decreases. I doubt that is so. To use *Blakely's* example, if under a set of guidelines a burglar faces 10 years if he was unarmed but 40 years if he carried a gun, then whether he carried a gun is a fact that, under *Blakely*, must, if not admitted, be determined by a jury. It matters not whether, in reaching this result, the guidelines make the base sentence 10 years, with a 30 year increase for carrying a gun, or instead make the base sentence 40 years, with a 30 year decrease for being unarmed. The same concept—that a circumstance affecting calculation of the guidelines range can be configured either as an increase or a decrease—is a truism, fully applicable to every specific offense characteristic that is (or ever could be) included in a guidelines system.

13. Each of the sentences I have imposed since *Blakely* have been within the guidelines range, except in the case at bar.

count 3. The decision to impose a sentence of 300 months was based on all the circumstances, including not only defendant's guilt and criminal record, but also the small quantity of drugs involved in this offense, defendant's limited role in the offense (defendant drove and knew drug transactions were in progress, but he did not arrange the sales or, so far as this record indicates, assist in any other way), and defendant's limited involvement with the assault weapon (defendant apparently never had that firearm in his hands). In the words of Congress, a sentence of 300 months for this defendant under these circumstances is "sufficient," and a greater sentence is not "necessary," to comply with the statutorily-defined purposes of sentencing. 18 U.S.C. § 3553(a).[14]

### Conclusion

*Blakely* renders the fact-finding procedure inherent in the federal sentencing guidelines—under which judges find facts on which applications of or departures from the guidelines are based—unconstitutional. The result is not that some parts of the guidelines now apply while other parts do not, thus distorting the sentencing ranges applicable to many cases. Nor is the result that the guidelines apply in some cases but not others, thus promoting rather than reducing sentencing disparity. The result instead is that the guidelines may and properly should be considered in all cases but are no longer binding. This defendant has been sentenced accordingly.

---

**14.** But for *Blakely*, I would have imposed a sentence of 330 months, because, if the guidelines were binding, no departure from the guidelines range would be warranted. Still, it perhaps should be noted that the guidelines range would have been the same even if defendant had been the moving force behind the drug transactions, even if substantially greater quantities of drugs had been involved, and even if defendant had owned and carried the assault weapon. Further, the low end of the range was 22 months higher than it would have been had defendant pled guilty just four days sooner. *See* U.S. Sentencing Guidelines Manual § 3E1.1 (2003) (providing three-level reduction (for defendant with offense level of 16 or greater) if defendant accepts responsibility and enters timely guilty plea but two-level reduction otherwise); Order of March 11, 2004 (document 32) at 4 (requiring plea to be tendered four days before trial to qualify for three-level reduction). A low-end sentence of 322 months, for this defendant, would have been unusually harsh, when compared to other guidelines sentences.