In the

# United States Court of Appeals
### For the Seventh Circuit

———————

Nos. 03-2998 & 03-2999

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

AISHAUNA WARD and GREGORY WARD,

*Defendants-Appellants.*

———————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 927—**David H. Coar**, *Judge.*

———————

ARGUED MAY 18, 2004—DECIDED JULY 23, 2004

———————

Before FLAUM, *Chief Judge*, and KANNE and ROVNER, *Circuit Judges.*

FLAUM, *Chief Judge.* On October 26, 2001, Gregory and Aishauna Ward, a recently married couple, robbed the bank where Ms. Ward was employed. They were subsequently tried and convicted for conspiring to rob a bank, using force, violence, or intimidation to rob a bank, and using a firearm during the commission of a crime of violence. Gregory Ward now appeals his conviction, and Aishauna Ward appeals her conviction and sentence. For the reasons stated herein, we affirm their convictions but remand both cases for

resentencing.

## I. BACKGROUND

At approximately 7:00 a.m. on October 26, 2001, Aishauna Ward arrived for work at the TCF Bank located inside the Jewel-Osco grocery store at 17705 South Halsted, Homewood, Illinois. Ms. Ward was not originally scheduled to work the morning shift, but she had instead volunteered to replace a sick colleague. Her only co-worker that morning was Shantel James.

While James was sitting inside the bank's glass enclosed office and preparing for the start of business, she noticed Ms. Ward speaking to a man near the teller line. A few minutes later Ms. Ward came into the office with the man, who was then wearing a bandana over his face and a black leather coat with the hood over his head. The man pointed a gun at James and demanded that Ms. Ward fill a bag with money.

Ms. Ward complied with the robber's directions. The robber allowed her to walk unescorted through an opaque door and down a hallway to the bank's vault. Once she reached the vault, Ms. Ward filled the bag with $209,000 and then returned to where the robber was located. Although Ms. Ward had passed the bank's five teller stations on the way to and from the vault, and each teller station had a silent alarm button, she did not press any of these alarms. Nor did she press the silent alarm button in the vault. Even though there was a dye packet right next to the money in the vault, which would have exploded once it left the bank's premises, Ms. Ward did not place it into the robber's bag. Upon her return to the bank's office, the robber demanded that Ms. Ward retrieve the bank's surveillance tape, which was kept in the vault. Ms. Ward again traveled unescorted to the vault, again ignored the six silent alarm buttons, and came back to the office with

the correct videotape although there were other tapes she could have used. The robber took the tape and then led James out of the bank at gunpoint.

The robber forced James outside of the Jewel store and approximately four store lengths' down the street when he then instructed her to walk slowly back to the bank while he drove away. James returned to the bank and found Ms. Ward, who still had not called the police or pressed any alarm buttons. James requested that Ms. Ward call the police while James pressed the teller alarms. Ms. Ward did call 911, but appeared to be hyperventilating and gave the dispatcher no information. James eventually took the phone from Ms. Ward and spoke to the police.

Six days later, Ms. Ward and her husband Gregory were arrested for the robbery of the TCF Bank branch. After her arrest, Ms. Ward gave the police consent to search the house she and Mr. Ward shared. In the house, police discovered more than $23,000 in cash hidden in both bedroom dressers, the bedroom closet, and the kitchen. The money in the kitchen was found inside a bag marked "FRB" for "Federal Reserve Bank". Additionally, the police recovered a hooded black leather coat and a bandana similar to those worn by the robber. Later, police obtained Mr. Ward's gun which was also similar to that carried by the robber. In the driveway was a newly purchased car Mr. Ward had given a friend $7,200 in cash to buy for him four days after the robbery.

Mr. and Ms. Ward subsequently were charged with conspiring to rob a bank and using a firearm during the commission of a crime of violence. After Mr. Ward was released on bond, he called his sister on December 3, 2001. Mr. Ward asked his sister if he could retrieve a bag he had given her to hold following the robbery. Mr. Ward's sister informed him that the bag, which initially contained $50,000 in cash, was being safeguarded by family friend

Kimberly Gardner and her boyfriend Michael Bryant.

A few hours later, Mr. Ward and his sister drove to Gardner's apartment to retrieve the bag. Suspiciously, the bag could not be located, which caused Mr. Ward to become upset. Mr. Ward, his sister, and Gardner and Bryant all stood around the kitchen and bathroom area of Gardner's apartment, and Mr. Ward's sister then said, "I don't believe he's getting ready to go to jail for 10 years for something he doesn't even have" and that the money was "the money they got when they robbed the bank." Mr. Ward did not respond, but a few minutes later stated that "something got to give or else I'm gon' catch a murder before I go back to jail." Mr. Ward and his sister then left the apartment, and on the way home, he said, "she's not going to believe [that I don't] have the money."

The next day, Gardner and Bryant turned Mr. Ward's missing bag over to the FBI. By this point there was only $23,000 left in the bag, some of which was sequentially numbered $20 bills. Gardner agreed to testify regarding the previous day's events and in turn the government agreed not to prosecute her for spending bank robbery proceeds. With the help of Gardner's testimony, both Gregory and Aishauna Ward were convicted of all of the charges against them after a three-day jury trial. They now appeal.

## II. DISCUSSION

Gregory and Aishauna Ward begin by challenging the admission of Gardner's testimony regarding the events of December 3, 2001. Specifically, they contend that Gardner should not have been allowed to testify that after Mr. Ward's sister said, "that's the money they got when they robbed the bank," Mr. Ward remained silent. Ms. Ward argues separately that even if this testimony was allowed against Mr. Ward, it should not have been used against her.

We begin by determining whether this evidence was admissible against Mr. Ward. Although Mr. Ward argues that his sister's statement was hearsay and thus should have been excluded, the district court found that Mr. Ward's silence in the face of his sister's assertion that he had robbed a bank was an adoptive admission. Under Federal Rule of Evidence 801(d)(2)(B), a statement is not hearsay if it is offered against a party and is "a statement of which the party has manifested an adoption or belief in its truth." It is not necessary for one to use any specific language to adopt another's statement. *See United States v. Rollins*, 862 F.2d 1282, 1296 (7th Cir. 1988). Rather, a statement may be adopted as long as the statement was made in the defendant's presence, the defendant understood the statement, and the defendant has the opportunity to deny the statement but did not do so. *See United States v. Young*, 814 F.2d 392, 396 (7th Cir. 1987). We review the district court's determination that Mr. Ward's silence was an adoptive admission for an abuse of discretion. *See United States v. Hernandez*, 330 F.3d 964, 969 (7th Cir. 2003).

Mr. Ward argues that the district court did abuse its discretion because there was no evidence that he heard or understood his sister's statement. He begins by distinguishing his case from *United States v. Andrus*, 775 F.2d 825, 839 (7th Cir. 1985), in which the defendant was found to have adopted another's statement partly because both were seated at the same table during the relevant discussion. From *Andrus*, Mr. Ward concludes that the government must prove that both the speaker and listener were in a confined space in order to establish that they could hear and understand each other. However, we decline to adopt such a narrow interpretation of the adoptive admission rule. While proof of proximity may be helpful to show that one heard and understood another, it is not determinative. A defendant may also demonstrate his cognizance of a conversation by his statements and conduct during or after

the conversation. *See, e.g., Rollins*, 862 F.2d at 1296 (finding that a defendant could hear and understand another based upon his participation in the give and take of the conversation).

In this case, Mr. Ward's location as well as his verbal responses show that he heard and understood the conversation taking place around him. While there was no testimony to establish the exact place each person was standing during the conversation, the witnesses did testify that Mr. Ward, his sister, and Gardner and Bryant were all in the kitchen and bathroom area of Gardner's basement apartment. Mr. Ward argues that the size of the kitchen and bathroom area was never specified, but the evidence did show that all four parties were together and having a heated discussion about Mr. Ward's $50,000. This, obviously, is a conversation in which Mr. Ward had a great interest. He was angry that the money was missing, and at various points in the conversation told Gardner that he trusted her because he knew her, but that he did not know Bryant. Mr. Ward's sister was also angry and stated that she could not believe her brother was going to jail for something he no longer had. A few moments later, Mr. Ward threatened Gardner and Bryant that if something did not change, he was going to "catch a murder" before he went to jail. This give and take between Mr. Ward and his sister, as well as Mr. Ward and the other parties to the conversation, indicates that each could hear and understand the other.

Thus, the district court did not abuse its discretion by admitting evidence that Mr. Ward remained silent when his sister said, "that's the money they got when they robbed the bank." This statement was made during the conversation discussed above, in which Mr. Ward was an active participant. Moreover, Mr. Ward's silence qualifies as an admission because his sister's accusation is the type of statement that a party normally would respond to if innocent. *See* Fed.

R. Evid. 801(d)(2)(B) Advisory Note to Subdivision d (stating that "[w]hen silence is relied upon, the theory is that the person would, under the circumstances, protest the statement made in his presence, if untrue"). For these reasons, the statement was properly admitted against Mr. Ward.

We now turn to the issue of whether the statement "that's the money they got when they robbed the bank" should have been admitted against Ms. Ward. Ms. Ward argues that the introduction of her co-defendant's admission violates her rights under the Confrontation Clause. It is true that the Constitution protects the entitlement of an accused to confront the witnesses against her and to cross-examine them. *See Bruton v. United States*, 391 U.S. 123, 134 (1968). It is also "a fundamental principle of our jurisprudence . . . that the jury may not consider any admissions against any party who did not join in them." *Id.* at 134-35. When one defendant's confession expressly implicates another defendant, it is both powerfully incriminating and at the same time inherently unreliable because co-defendants have significant motive to lie and cannot be compelled to testify at trial. For this reason, courts look upon such evidence with skepticism, and the proper course is to redact any such statement so that it no longer directly implicates a co-defendant. *See, e.g., United States v. Souffront*, 338 F.3d 809, 829 (7th Cir. 2003). When redaction is coupled with a limiting instruction to the jury that it may not consider the evidence against anyone other than the confessing defendant, a defendant's Confrontation Clause rights are sufficiently protected. *See United States v. Sutton*, 337 F.3d 792, 799 (7th Cir. 2003).

Ordinarily, we review the admission of a co-defendant's confession for harmless error. *See, e.g., United States v. Hernandez*, 330 F.3d 964, 974 (7th Cir. 2003). In this case, our review is even more limited because Ms. Ward did not object to the use of this testimony at trial. Therefore, the

district court's ruling is subject to review for plain error. Plain error occurs if the district court committed error in admitting the testimony and reversal is required to prevent "a miscarriage of justice." *United States v. Chrismon*, 965 F.2d 1465, 1473 (7th Cir. 1992).

In this case it is clear that even if it was error to admit Mr. Ward's sister's statement against Ms. Ward, there was no miscarriage of justice and any error was harmless. First, the jury was given an instruction explaining that it must analyze what the evidence showed about each defendant separately.[1] Moreover, although the statement was not redacted, it did not directly implicate Ms. Ward. At most, the word "they" implies that Mr. Ward had the help of one or more other individuals in robbing the bank. The district court did not link "they" to "Aishauna Ward," and in fact explained in its jury instructions that "the defendant Gregory Ward [was accused] of a crime, and . . . did not deny or object to the accusation." Nor did the government seize upon the statement as evidence of Ms. Ward's guilt, and it did not refer to the statement at all in its closing argument when discussing the evidence against Ms. Ward.

Most importantly, there was overwhelming evidence of Ms. Ward's guilt even without the admission of the statement "they robbed the bank". At the forefront is Ms. Ward's behavior during the bank robbery itself. Although she had more than twenty opportunities to press a silent alarm button without the robber knowing, Ms. Ward did not do so. While Ms. Ward failed to include a dye packet within the robber's bag, she quite easily provided the robber with the

---

[1] The instruction stated: "Even though the defendants are being tried together, you must give each of them separate consideration. In doing this, you must analyze what evidence shows about each defendant. Each defendant is entitled to have his or her case decided on the evidence and the law that applies to that defendant."

correct surveillance videotape of the robbery. Finally, when her co-worker was led away at gunpoint Ms. Ward did not call the police or press a silent alarm button. It is no surprise that the robber trusted her enough to allow her to travel unescorted throughout the bank and collect the money for him; all of Ms. Ward's actions on the day of the robbery seemed directed towards ensuring the robbery's success.

Ms. Ward tries to justify her behavior as that of a victim who was panicking and trying to protect her own life. This would perhaps be a reasonable explanation if the police had not found $10,000 in a Federal Reserve Bank bag in Ms. Ward's kitchen cabinet less than a week after the robbery. Making Ms. Ward's account even less believable is the $9,730 in cash hidden in her bedroom, the $50,000 her husband gave his sister to hide days after the robbery, and the discovery of her husband's black trenchcoat, bandana, and gun, all of which were similar to those the robber possessed. Considering all of this evidence, we cannot say that Ms. Ward "probably would have been acquitted but for" the statement at issue. *See United States v. Carroll*, 871 F.2d 689, 692 (7th Cir. 1989). Ms. Ward therefore cannot show that the district court plainly erred by admitting the testimony.

Ms. Ward next challenges the sufficiency of the evidence against her. This argument fails for reasons similar to those stated above. Ms. Ward concedes that the government proved that she had knowledge of Mr. Ward's criminal activities and was present at the crime scene. She argues, however, that there was no evidence that she entered into an agreement to rob the bank with her husband. We disagree. Ms. Ward's agreement to rob the bank was evidenced by her use of her status as an employee to facilitate the robbery and reinforced by her possession of $20,000 of the proceeds in her bedroom and kitchen. When the evidence is viewed in the light most favorable to the

government, a rational jury could certainly have found the essential elements of the claim beyond a reasonable doubt. *See United States v. Sanapaw*, 366 F.3d 492, 495-96 (7th Cir. 2004).

Ms. Ward's final argument on appeal is a challenge to the four-level sentence enhancement she received for Mr. Ward's abduction of James at gunpoint. Both Mr. and Mrs. Ward received enhancements based upon U.S. Sentencing Guidelines Manual § 2B3.1(b)(4)(a), which provides that the defendant's sentence should be enhanced if the district court finds that a person was abducted to facilitate the offense or to facilitate escape. As this Court recently determined in *United States v. Booker*, 2004 WL 1535858 (7th Cir. July 9, 2004), the Supreme Court's decision in *Blakely v. Washington*, 2004 WL 1402697 (U.S. June 24, 2004), calls into doubt the constitutionality of such enhancements. *See also United States v. Penaranda*, 2004 WL 1551369 (2d Cir. July 12, 2004)*; United States v. Montgomery*, 2004 WL 1562904 (6th Cir. July 14, 2004)*; but see United States v. Pineiro,* 2004 WL 1543170 (5th Cir. July 12, 2004) (addressing this issue but holding that *Blakely* should not be read to invalidate the U.S. Sentencing Guidelines). Under *Blakely* as interpreted in *Booker*, a defendant has the right to have a jury decide factual issues that will increase the defendant's sentence. As *Booker* holds, the Guidelines's contrary assertion that a district judge may make such factual determinations based upon the preponderance of the evidence runs afoul of the Sixth Amendment. Thus, in light of the analysis set forth in *Booker*, we remand these cases to the district court for resentencing.

### III. Conclusion

For the foregoing reasons, the judgments of conviction are AFFIRMED. The sentences imposed are VACATED and the cases are REMANDED for resentencing.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*