NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 9, 2012[*]
Decided July 12, 2012

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-3217

| | |
|---|---|
| JOHN W. PEROTTI, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Indiana, |
| | Terre Haute Division. |
| *v.* | |
| | No. 2:10-cv-86-JMS-MJD |
| DIANA QUINONES, et al., | |
| *Defendants-Appellees.* | Jane E. Magnus-Stinson, |
| | *Judge.* |

**O R D E R**

John Perotti briefly worked as a clerk in the prison law library while incarcerated at the federal penitentiary in Terre Haute, Indiana. In this lawsuit under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), he alleges that twice he was fired from his clerk position. The first time, he says, two prison employees took away his job in retaliation for filing grievances. And when he succeeded in getting that action reversed,

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See Fed. R. App. P. 34(a)(2)(C).

Perotti continues, a third prison employee got him fired permanently in retaliation for providing legal assistance to other inmates. The district court granted summary judgment for the defendants, reasoning that Perotti lacks evidence of their personal involvement in the decisions to terminate his employment.

We review the admissible evidence at summary judgment in the light most favorable to Perotti. See *Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 560 (7th Cir. 2011). Perotti had been working in the law library as an orderly for several months during 2008 when Billie Kelsheimer, a Bureau of Prisons teacher assigned to the library, offered him a promotion to the position of clerk. He accepted, but on September 5, after just two weeks on the job, Kelsheimer told him that the clerk position no longer was his. According to Perotti, Kelsheimer explained that Diana Quinones, the prison's supervisor of education, had told Kelsheimer she would not approve the promotion because he filed too many administrative grievances against the prison's education department.

At times during this litigation, Quinones and Kelsheimer, both of them defendants, have said that Perotti was not even promoted until September 17, but that is their view of the evidence, not his. Perotti contends that he was promoted in August, fired on September 5, and *reinstated* on September 29. Quinones and Kelsheimer rest their litigation position on hearsay in the declaration of Perotti's correctional counselor, who purportedly reviewed an undisclosed computer record "indicating," she says, that Perotti worked in the Education Department (which includes the law library) from April 2008 *until* September 17. On the other hand, Kelsheimer answered an interrogatory by saying that she could not even recall recommending Perotti for a promotion, and she has never denied that he was fired and reinstated shortly after he was promoted. Neither has Quinones herself denied that Perotti was fired and rehired. She did respond to one of his interrogatories by flatly denying that she told Kelsheimer he must lose his clerk job because he filed too many grievances. This denial came, however, many months after Quinones had ignored – and as far as the record shows, never did answer – Perotti's written request to admit that she "refused to change" his job classification from orderly to clerk and told Kelsheimer that the reason for this decision was Perotti's filing of "too many" grievances against her department. In their motions for summary judgment, Quinones and Kelsheimer did not introduce evidence suggesting, let alone proving beyond reasonable dispute, that someone other than the two of them had made the decisions to promote Perotti in August and then fire him on September 5.

Perotti reacted to losing his promotion by complaining that he was being retaliated against for utilizing the grievance system. Three weeks later – on September 29 – an associate warden met with Quinones and Kelsheimer in Perotti's presence and directed them to reinstate him to his clerk position. For purposes of summary judgment, we must assume this meeting occurred as plaintiff says. Perotti avers that during this meeting the associate warden

instructed these two defendants to give him back pay, and a payroll record introduced by the defendants corroborates his account.

Perotti was reinstated on September 29, but his success was fleeting. On October 1, 2008, he was helping another inmate prepare an administrative appeal and tried to photocopy some documents. Laura Wheeler, another teacher working in the law library, demanded to see those documents, with the explanation that Perotti could not use the copier without proof of an impending legal deadline. Wheeler looked at the documents, told Perotti that he was not permitted to assist other inmates in filing "liens," and told him to take the documents and leave the copy room. Perotti did so and sent the papers back to their owner, who was challenging a disciplinary sanction for threatening to file a lien against a prison employee. Fifteen minutes later, Wheeler and a guard confronted Perotti and demanded the papers. When Perotti said he no longer had them, Wheeler searched his bag and confiscated copies belonging to Perotti of unrelated public records. Wheeler then filed a misconduct report accusing Perotti of lying about having an impending deadline and violating a policy forbidding prisoners from possessing another inmate's legal materials outside the library. Wheeler, the third defendant in this lawsuit, promptly recommended to Perotti's correctional counselor that he be fired from his library position.

Based on the misconduct report and Wheeler's recommendation, Perotti's counselor, who is not a defendant, removed him a second time from his library position. He complained to the assistant warden that his counselor had violated BOP policy by removing him before the misconduct report had been adjudicated. The assistant warden agreed and once again ordered him reinstated, but two hours later his counselor presided over a disciplinary hearing and declared him guilty of both charges. As part of his punishment, his counselor then permanently removed him from his position in the law library. He appealed the findings of guilt, and both eventually were reversed – the charge for possessing another inmate's papers because it was unfounded and the charge for lying due to an undisclosed "procedural error." By that point five months had passed; Perotti was again awarded back pay, but he was not returned to his job in the law library or given any other job at Terre Haute. He was transferred to a different facility in April 2010.

Perotti then filed this suit in state court. The three defendants removed the case to federal court, and after screening Perotti's complaint, see 28 U.S.C. § 1915A, the district court allowed his retaliation claims to proceed. At summary judgment, however, the court credited the defendants' denials of personal involvement in the alleged retaliation. Like the defendants, the district judge did not appreciate that Perotti claims he was fired *twice*, not once. The district court reasoned that Perotti had only hearsay to support his contention that Quinones

ordered Kelsheimer to rescind his promotion. And Kelsheimer and Wheeler, the court continued, were not the employees who decided to fire him.

On appeal, Perotti first contends that the district court should have excluded the declarations of the defendants and other BOP employees because the authors do not say explicitly that they are speaking from personal knowledge. The absence of such a representation, however, is not a valid objection to the declarations. To the extent that the authors are speaking about their duties or the events they purportedly witnessed, personal knowledge reasonably can be inferred from the content of the declarations. See *DirecTV, Inc. v. Budden*, 420 F.3d 521, 529–30 (5th Cir. 2005); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990). Perhaps instead Perotti criticizes the declarations because they also include some representations of fact that plainly are not based on personal knowledge, but since our review is *de novo*, *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011), we may cure any possible error by considering only the portions that are admissible, see *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506 (7th Cir. 2004).

Perotti also contends that the district court erroneously concluded that he did not present sufficient evidence to survive summary judgment. As to Quinones and Kelsheimer, we agree with him.

As noted, Kelsheimer has not denied recommending Perotti for a promotion, nor has she denied that he was fired and then reinstated soon after he was promoted. Her position seems to be that someone else made the decision to end his tenure as a clerk, but in making this argument Kelsheimer focuses on the *second* termination, not the first. What is clear about the first termination is that, when the assistant warden overturned that decision, she did so in a meeting at which Quinones and Kelsheimer were the only staff members in attendance, and from this a jury reasonably can infer that the assistant warden was addressing them because they were the employees being overruled. Perotti says that it was Kelsheimer who told him on September 5 that he no longer had a job, so it is unlikely that she did not participate in taking away his promotion.

Kelsheimer might argue that she made the announcement though not the decision, but a jury could find otherwise. Perotti avers in his verified complaint and later affidavit that Kelsheimer called him into her office and told him he was being fired "because Quinones said he 'filed too many administrative remedies.'" Perotti's account of Kelsheimer's statement is admissible against Kelsheimer as a nonhearsay party admission. See Fed. R. Evid. 801(d)(2)(A); *United States v. Penaloza*, 648 F.3d 539, 545 (7th Cir. 2011). Read in the light most favorable to Perotti, it shows not only awareness that he was being fired in retaliation for using the grievance process but also suggests that Kelsheimer had a voice in the decision and at least

acquiesced. Perotti avers that Kelsheimer gave him the job, and a jury could infer that, although her boss Quinones was the impetus, she made the decision to take it away. This inference is only made stronger by the failure of both Quinones and Kelsheimer to explain who, if not they, rescinded Perotti's promotion before the assistant warden reinstated him.

As for Quinones, the district court reasoned that she is off the hook because Perotti would encounter a hearsay objection if he tried to testify about what Quinones told Kelsheimer (and he cannot call Kelsheimer because she has said she cannot recall the conversation). The district court, however, did not fully consider other evidence linking Quinones to the statement attributed to her by Kelsheimer. In his affidavit Perotti says that, after he was told by Kelsheimer that his promotion had been rescinded, he confronted Quinones, who did not deny that she had put the kibosh on his promotion due to his past grievances. Thus there is evidence that Quinones failed to deny retaliatory conduct when accused, which is admissible as an adoptive admission if a reasonable person would have been expected to deny the accusation if it was false. See Fed. R. Evid. 801(d)(2)(B); *United States v. Ward*, 377 F.3d 671, 675–76 (7th Cir. 2004); *Rahn v. Hawkins*, 464 F.3d 813, 820–21 (8th Cir. 2006). Further, based on the record before us, we cannot determine whether Quinones ever answered Perotti's request that she admit having refused to upgrade his job classification from orderly to clerk and said the reason was his grievances against her department. If she did not answer this request for admission, the district court was obligated to deem that contention admitted, notwithstanding that Quinones elsewhere denied personal involvement in firing Perotti, see Fed. R. Civ. P. 36(a)(3), unless the court grants relief from the admission under Rule 36(b). See *McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003); *United States v. Kasuboski*, 834 F.2d 1345, 1349 (7th Cir. 1987).

Accordingly, the retaliation claim against Quinones and Kelsheimer must be remanded for trial. Summary judgment was appropriate, however, on Perotti's claim that Wheeler retaliated against him for providing legal assistance to other inmates – though not for the reason that the district court stated. The court discerned no evidence that Wheeler was personally involved in the decision to terminate Perotti's library employment; that is a puzzling conclusion given the admission in the defendants' answer to Perotti's complaint that he "was fired from his library job by Individual Defendant Wheeler." Regardless, the conclusion is untenable since the *only* reason Perotti was fired the second time is that his counselor found him guilty of the misconduct charges lodged by Wheeler. It may be true that Perotti's counselor made the final decision to permanently remove him from his job as a clerk, but to say that Wheeler did not participate in the chain of events leading to his termination is inaccurate.

Yet Perotti's claim still lacks merit. He accuses Wheeler of lodging false misconduct

charges, an action that could support a claim for retaliation. See *Black v. Lane*, 22 F.3d 1395, 1402–03 (7th Cir. 1994). Falsifying a disciplinary charge, however, will not give rise to liability for unconstitutional retaliation unless the motive for the fabrication was to retaliate for the exercise of a constitutional right. See *Lagerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2006); *Black*, 22 F.3d at 1402. And inmates do not have a constitutional right to provide legal assistance to other prisoners. See *Shaw v. Murphy*, 532 U.S. 223, 231 (2001) (declining "to cloak the provision of legal assistance with any First Amendment protection above and beyond the protection normally accorded prisoners' speech"); *Watkins v. Kasper*, 599 F.3d 791, 797 (7th Cir. 2010). Perotti tries to ground such a right in BOP program statements authorizing inmates to assist each other with legal work, *see* U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statements 1315.07(10)(f), 1330.13(10), but these statements do not create constitutional rights, see *United States v. Caceres*, 440 U.S. 741, 751–52 (1979); *Robinson v. Sherrod*, 631 F.3d 839, 842 (7th Cir. 2011); *Miller v. Henman*, 804 F2d 421, 424–25 (7th Cir. 1986). Thus, even if a jury might conclude that Wheeler's accusation of misconduct was intentional rather than simply hasty, and even if the evidence points to a conclusion that she was motivated to fabricate the charges because of disdain for Perotti's assistance to other prisoners, his claim of actionable retaliation fails as a matter of law.

The order granting summary judgment for Quinones and Kelsheimer is **VACATED**, and the case is remanded for further proceedings as to those defendants. As to Wheeler the judgment is **AFFIRMED**.