**UNITED STATES of America,**
**Plaintiff,**

v.

**Frank Daniel HANKINS, Defendant.**

**No. CR 02–41–M–DWM–03.**

United States District Court,
D. Montana.

July 29, 2004.

Michael J. Sherwood, Sherwood Law Firm, Missoula, MT, for Defendant.

Josh Van de Wetering, Assistant U.S. Attorney, Missoula, MT, for Plaintiff.

ORDER

MOLLOY, Chief Judge.

## I. INTRODUCTION

Defendant Hankins was sentenced on July 6, 2004, after having pled guilty to

conspiring to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. Counsel for both the United States and Hankins raised questions about the application of *Blakely v. Washington,* — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In imposing sentence I determined that *Blakely* does apply to federal sentences imposed under the Guidelines. In doing so I did not apply an "all or nothing" approach. In my view, the Guidelines can be applied on an individualized case-by-case basis.

## II. SENTENCING IN LIGHT OF *BLAKELY*

The constitutionally novel and elusive distinction raised by *Apprendi* and *Blakely* is the distinction between offense "elements" or "sentencing enhancements" and "sentencing factors." At its heart this determination is not one of form, but one of effect. It should make no difference that guilt is determined by a jury or by a plea in most instances because the relevant question is whether the required factual finding exposes the defendant to a greater punishment than that authorized by the guilt determination. *See Apprendi v. New Jersey,* 530 U.S. 466, 494, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In other words, what is the maximum statutory penalty range for the offense charged in the indictment?

■ A "sentencing factor" describes a fact or circumstance that may be either mitigating or aggravating, and supports a specific sentence within the range set by the legislature and authorized by the admission of guilt to a specific offense, or a jury determination that the defendant is guilty of a particular offense. *Apprendi,* 530 U.S. at 494 n. 19, 120 S.Ct. 2348.

On the other hand, "element" or "sentence enhancement" describes an increase beyond the maximum authorized statutory sentence. Functionally it is equivalent to finding an element beyond that covered by the plea of guilty to a specific crime, or the facts encompassed in a jury determination of guilt. *See Apprendi,* 530 U.S. at 494 n. 19, 120 S.Ct. 2348. In other words, finding that fact will cause the range of sentencing to be greater than the range of sentence for the crime admitted, or determined to have been committed by the jury.[1]

■ The characterization of facts cannot change the nature of the conduct that is supposed to be punished according to the statutes enacted by the respective legislative body, which is the Congress in the case of the Federal Sentencing Guidelines. The guidelines are, for the most part, not statutorily enacted ranges of sentencing, but are rather factors to implement the congressionally mandated range of sentencing. *Cf., e.g.,* 21 U.S.C. § 841(b) and 18 U.S.C. § 2119 with U.S.S.G. § 2D1.11 and U.S.S.G. § 2B3.1. A sentencing factor

---

1. By way of example, if the defendant is indicted for violating 21 U.S.C. § 841(a) the sentencing structure is set by 21 U.S.C. § 841(b). This is analogous to the car jacking offenses described in *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), wherein Justice Souter held that 18 U.S.C. § 2119 described three separate offenses. So, if the indictment charges 50 grams or more of methamphetamine mixture or substance, which carries a penalty of 5 years to 40 years, relevant conduct amounting to more than 500 grams could not subject the

defendant to the greater statutory sentence of 10 to life unless a jury determined the 500 grams, or the defendant admitted it. But, I think under *Blakely* and *Apprendi* the court can determine the appropriate guideline range for the offense of conviction, that is the drug quantity between 50 grams and 499 grams. Even though the punishment imposed increases incrementally based on quantity, it does not change the elements of the offense of conviction nor does it expose the convicted person to a greater penalty than the statutory range allows.

**1228**

does not increase the penal consequences to the defendant, while a sentencing enhancement does. What it boils down to is the legislative body cannot constitutionally remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. *Jones,* 526 U.S. at 252, 119 S.Ct. 1215, (Stevens, J., concurring), 526 U.S. at 253, 119 S.Ct. 1215, (Scalia, J., concurring).

The problem created by *Blakely* seems to be whether the incremental facts adjusting a base offense level under the federal sentencing guidelines are "sentencing factors" determinable by the court, or "sentencing enhancements" subject to Sixth Amendment scrutiny. This leads to the judicial treatment of statutory maximums and what the phrase means.

### III. WHAT IS A STATUTORY MAXIMUM?

A number of courts have issued opinions in the wake of *Blakely. See, e.g., United States v. Croxford,* 2004 WL 1521560 (D.Utah July 7, 2004); *United States v. Medas,* 2004 WL 1498183 (E.D.N.Y. July 1, 2004); *United States v. Shamblin,* 2004 WL 1468561 (S.D.W.Va., June 30, 2004); *United States v. Montgomery,* 2004 WL 1535646 (D.Utah July 8, 2004). The reasoning of these courts is similar to that expressed by Professor Stephanos Bibas in his forthcoming article, Blakely's *Federal Aftermath,* 16 FED. SENTENCING REP. (forthcoming 2004). Bibas holds the view, as do many of the cited authorities, that "the relevant maximum is the maximum that a judge can impose based upon the jury's factual findings, whether that maximum is set by statute or guideline." *Id.* at 4. Bibas echoes the analysis and conclusions reached by many courts in the weeks since *Blakely* was decided:

> *Blakely* never suggests that Washington's statutory guidelines might be different from guidelines enacted by a separate sentencing commission. Any such distinction would be illogical, as it would suggest that Congress may delegate to a commission power that it may not exercise itself.

*Id.* at 5 (citing *United States v. Booker,* 2004 WL 1535858 at *3 (7th Cir. July 9, 2004)).

It is the idea that guidelines equate with statutes, the key conclusion drawn from *Blakely,* that has created such tumult in the federal courts. Judge Easterbrook, who dissented in *Booker,* raises the pertinent issue: Does *Blakely* really lead unerringly to the conclusion that there is no distinction between guidelines and statutory maxima in sentencing? Is there a way to interpret *Blakely* that honors both the Sixth Amendment and the Federal Sentencing Guidelines? That, of course, is the constitutional task assigned to the Judicial Branch.

In my view, there is. However, my analysis rests upon a conclusion summarily dismissed by Professor Bibas, Judge Posner, and many other commentators: that a statutorily enacted guideline system may be legally distinct from a commission-enacted guideline system. A district judge in sentencing a defendant must at least attempt to find a sound distinction before dismissing that possibility.

Any principled application of *Blakely* must begin with an interpretation that looks beyond the bare holding of *Blakely* to the roots from which *Blakely* has grown-a line of cases, originating in Due Process. These cases consider the due process doctrine that requires distinguishing between elements of an offense and sentencing factors. *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132

L.Ed.2d 444 (1995); *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002); *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

The Due Process Clause informed the holding of *Apprendi,* a case that on its facts applied to the states, but one that changed federal court practice as well: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. Post-*Apprendi* cases refined this holding to the rule enunciated in *Blakely:* "The 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of facts reflected in the jury verdict or admitted by the defendant.*" *Blakely,* —— U.S. ——, 124 S.Ct. 2531 at II (citing *Ring,* 536 U.S. at 602, 122 S.Ct. 2428, *Harris,* 536 U.S. at 563, 122 S.Ct. 2406, *Apprendi,* 530 U.S. at 488, 120 S.Ct. 2348)(emphasis in original). This is the statement that many believe leads to the conclusion that the Federal Guidelines are unconstitutional. However, further analysis of this legal proposition, including its evolution through case law, leads me to believe that the "statutory maximum" means "the maximum penalty prescribed by the legislature, provided the legislature or its agent does not label a substantive offense element as a sentencing factor." This interpretation upholds the Guidelines and protects defendants' Sixth Amendment rights. It is a view that acknowledges the structural role of the legislature and the courts. It applies the intent of Congress but does so within the specific constitutional role of the courts and juries when holding a specific defendant accountable for violating the provisions of substantive criminal law.

## IV. THE SIXTH AMENDMENT

The Sixth Amendment provides a number of enumerated substantive rights to criminal defendants:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. Constitution, Amend. VI. This Amendment, as construed by the U.S. Supreme Court, distinguishes the role of the judge and the jury. The Sixth Amendment protects against judicial factfinding, and mandates jury fact finding, when (1) the facts found are elements of a separate crime that has not been charged, or (2) the facts found increase the penalty above the maximum range established by statute. *Jones,* 526 U.S. at 248–49, 119 S.Ct. 1215; *Apprendi,* 530 U.S. at 476, 120 S.Ct. 2348.

Before *Apprendi,* there was a structural idea that the legislature had ultimate authority not only to define what was criminal, but also to determine how a judge was to determine a sentence. That notion is refined now to acknowledge that determination of facts for guilt, and for increasing statutory sentences, is solely a jury function.

The *Apprendi* decision began whittling away at a state's authority to determine when a fact is a sentencing factor and

when it is an offense element or sentencing enhancement. *Apprendi* presented what now seem to be egregious facts. In *Apprendi* the petitioner was convicted under one statute, then had his sentence enhanced under a second statute which explicitly authorized the trial judge to make findings of fact by a preponderance of the evidence. Although Apprendi faced 5–10 years on the charge for which he was tried and convicted, he was nonetheless sentenced to 12 years based upon the sentencing judge's additional fact findings. These facts were not charged or presented to a jury, but only to the sentencing judge. *Apprendi* teaches that the maximum penalty authorized by statute for the crime of conviction established a ceiling, beneath which the judge is free to make factual findings by a preponderance of evidence—a simple rule that was complicated by *Blakely*.

In a recent decision analyzing *Blakely*, Judge Posner stated, "It is hard to believe that the fact that the guidelines are promulgated by the U.S. Sentencing Commission rather than by a legislature can make a difference." *U.S. v. Booker*, 375 F.3d 508, 510–11 (7th Cir.2004). I disagree. It does make a difference. In my view, the answer as to why it does is found in Justice Scalia's dissent to *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), the case in which the Supreme Court held that the Federal Sentencing Guidelines did not excessively delegate legislative authority nor violate the separation of powers doctrine. As explained by Justice Scalia, the Sentencing Commission has no constitutional power to abrogate criminal penalties already established by Congress, nor does it have the

power to define elements of criminal offenses. If the legislature creates specific sentencing ranges that are lower than broad maximum penalties, *and* if any increase above those ranges depends upon facts that are more like elements of a crime than like traditional sentencing factors,[2] the Sixth Amendment is implicated, and a jury must find those facts. But the federal guidelines cannot, as a matter of law, usurp the substantive criminal statutes enacted by Congress.

## V. WASHINGTON'S GUIDELINE SYSTEM

In *Blakely*, this distinction between legislative power and agency power is not only evident, but crucial. The state of Washington has a statute providing for a maximum term of ten years imprisonment for class B felonies. Blakely pled guilty to second-degree kidnapping, a class B felony. The Washington legislature had also enacted sentencing guidelines, conceptually similar to the federal guidelines, but which provide for a statutory penalty of 49–53 months for the conduct to which Blakely pled. Finally, the Washington legislature gave judges the power to impose "exceptional" sentences-which exceed the statutory guideline ranges—upon the making of certain findings. This allocation is what the *Blakely* majority found was at odds with the constitutional role of the jury. Because the judge found that Blakely acted with "deliberate cruelty," he sentenced him to 90 months in prison—far short of the 10–year maximum for class B felonies, but substantially greater than the 53–month maximum under the statutory guidelines. Importantly, *Blakely* did not

---

**2.** The United States Supreme Court has frequently distinguished between traditional sentencing factors and elements of a criminal offense. *See, e.g., Apprendi, Jones.* The language can be simplified in my view by asking whether a particular fact is a detail of the crime of conviction of whether it leads to a new or different charge. If it is the former it is a factor, if the latter it is an element.

hold determinate sentencing unconstitutional. It says whatever sentencing scheme is enacted must respect the structural power of the legislature, the jury, and the sentencing judge.

The furor caused by *Blakely* is traceable to the conclusion that at first look appears obvious, and inescapable: That a sentencing range under the Federal Sentencing Guidelines establishes a "statutory maximum," above which the sentencing court cannot go unless the facts relied upon have been found by a jury or admitted by the defendant. But, as with many first impressions, on reflection the obvious becomes more opaque. In his dissent to *Booker*, Judge Easterbrook noted this when he observed that a statutory maximum is just that: a maximum penalty established by statute. *United States v. Booker*, 375 F.3d 508, 518–20 (7th Cir. 2004) (Easterbrook, J., dissenting). He asks, "Why write 'statutory maximum' if you mean 'all circumstances that go into ascertaining the proper sentence'?" *Id.* at 518. His question is especially weighty in light of the fact that Justice Scalia, the author of the *Blakely* opinion, wields the English language with uncommon precision.

The answer lies in several Supreme Court decisions addressing constitutional limitations on sentencing, i.e., the legislature's authority to denominate a fact a sentencing factor, which a judge may find by a preponderance, contrasted with the legislative power to establish the elements of criminal offenses, or sentencing enhancements which a jury must find beyond a reasonable doubt.

## VI. *MCMILLAN* AND BEYOND

The Supreme Court held in *McMillan* held that a state may impose a mandatory minimum sentence upon a finding of "visible possession of a firearm," which the Court viewed as a sentencing factor rather than an element of a particular crime. 477 U.S. at 91–92, 106 S.Ct. 2411. The Court rejected petitioner's Sixth Amendment challenge summarily, saying, "[W]e need only note that there is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific facts." *Id.* at 93, 106 S.Ct. 2411. So, in thinking about *Blakely*, we know the Supreme Court has stated there is no right to have a jury decide every sentencing fact.

In analyzing the Due Process claim, the *McMillan* majority did not buy petitioner's argument that Pennsylvania was merely labeling a substantive offense element as a sentencing factor. It did so noting that such a claim "would have at least more superficial appeal if a finding of visible possession exposed them to greater or additional punishment, .... but it does not." *Id.* at 88, 106 S.Ct. 2411 (comparing 18 U.S.C. § 2113(d), providing for separate and greater punishment for bank robberies accomplished through "use of a dangerous weapon or device.") Instead, the Court held that the Pennsylvania statute "neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of a visible possession of a firearm." *Id.* at 87–88, 106 S.Ct. 2411. Thus, *McMillan* establishes that facts setting a mandatory minimum can be found by a judge by a preponderance of evidence standard, and that a jury is not implicated in every fact that can lead to a higher sentence, as long as that sentence is below the statutory maximum. *McMillan* also said there are constitutional limits beyond which a state cannot go, but left that outer limit undefined. *Id.* at 86, 106 S.Ct. 2411.

*McMillan* is alive and well, as it was affirmed in a recent mandatory minimum sentencing case. *Harris v. United States*, 536 U.S. 545, 568, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). The *Harris* Court held that whether a defendant "brandishes" or "discharges" a firearm, the finding of which increases the mandatory minimum sentence by 2–3 years, is a sentencing fact that can be judicially found by a preponderance of evidence standard. *Id.* at 552, 122 S.Ct. 2406 (addressing 18 U.S.C. § 924(c)(1)(A)). In contrast, the Court held three years before *Harris* that the federal carjacking statute did *not* simply identify alternative penalties based upon judicially established sentencing factors, but instead defined three distinct offenses, each element of which must be proved beyond a reasonable doubt to a jury. *Jones*, 526 U.S. 227, 229, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (addressing 18 U.S.C. § 2119).

*Harris* and *Jones* provide fascinating insight into the Court's struggle with defining the proper role of the judge and the jury in modern sentencing, especially when read in light of *Blakely*. The *Jones* majority (Justices Souter, Stevens, Scalia, Thomas, and Ginsburg) is the *Blakely* majority. Interestingly, this same majority dissented in *Harris*, with one exception: Justice Scalia, author of the majority opinion in *Blakely*.

In *Jones*, the Court stated, "It is not, of course, that anyone today would claim that every fact with a bearing on sentencing must be found by a jury; we have resolved that general issue and have no intention of questioning its resolution." *Id.* at 248, 119 S.Ct. 1215. The majority of justices who

joined this specific proposition constitute the *Blakely* majority, which noted that the Federal Sentencing Guidelines were not under consideration. 124 S.Ct. at 2538 n. 9. I believe the Court means what it says. In doing so, it must be acknowledged that Supreme Court cases are evolving as the cases fleshing out Sixth Amendment's guarantee of trial by jury grow in importance.[3]

For instance, the Court held that the Sixth Amendment is not offended by a capital sentencing procedure whereby the jury renders an advisory verdict, but the judge imposes death upon the finding of at least one aggravating circumstance. *Hildwin v. Florida*, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989) (per curiam). "Like the visible possession of a firearm in *McMillan*, the existence of an aggravating factor here is not an element of the offense but instead is 'a sentencing factor that comes into play only after the defendant has been found guilty.'" *Id.* at 640, 109 S.Ct. 2055 (quoting *McMillan*, 477 U.S. at 86, 106 S.Ct. 2411). However, *Hildwin* engaged in essentially no analysis of the Sixth Amendment argument, and although it has not been explicitly overruled, its holding has given way to that announced in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

The *Ring* Court applied *Apprendi* and held that an Arizona statute directing a sentencing judge to make findings of aggravating or mitigating circumstances prior to imposing the death penalty offended the Sixth Amendment. *Id.* at 609, 122 S.Ct. 2428 (overruling *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990)). In a concurring opinion, Jus-

---

**3.** There seems to be a difference in the court's view of the sanctity of jury findings in civil cases and its necessary constitutional role in criminal cases. In civil cases, due process seems to limit the role of the jury as a fact finder. In criminal cases, due process seems to enhance the role of the jury as a fact finder. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).

tice Scalia explained how his thinking regarding the Sixth Amendment has evolved since *Walton:*

> [M]y observing over the past 12 years the accelerating propensity of both state and federal legislatures to adopt "sentencing factors" determined by judges that increase punishment beyond what is authorized by the jury's verdict, and my witnessing the belief of a near majority of my colleagues that this novel practice is perfectly OK, see *Apprendi, supra,* at 523, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (O'CONNOR, J., dissenting), cause me to believe that our people's traditional belief in the right of trial by jury is in perilous decline. That decline is bound to be confirmed, and indeed accelerated, by the repeated spectacle of a man's going to his death because *a judge* found that an aggravating factor existed. We cannot preserve our veneration for the protection of the jury in criminal cases if we render ourselves callous to the need for that protection by regularly imposing the death penalty without it.
>
> . . . . What today's decision says is that the jury must find the existence of the *fact* that an aggravating factor existed.

536 U.S. at 611–612, 122 S.Ct. 2428 (emphasis in original).

While *Ring* affirmed the defendant's right to trial by jury of every *fact* bearing upon his sentence, the Court earlier held that the Sixth Amendment also guarantees right to trial by jury on mixed issues of law and fact. *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (Scalia, J.). In *Gaudin*—one of the few unanimous decisions on this topic—the trial judge instructed the jury that "materiality" was a question for the court, and that it had decided that the statements at issue were material; the jury was left to decide only whether the statements were

made, and whether they were false. *Id.* at 508–09, 115 S.Ct. 2310. Justice Scalia invoked Blackstone to define the historical importance of the right to trial by jury— an historical reminder that is relied on again in *Jones,* 526 U.S. at 245–46, 119 S.Ct. 1215, in *Apprendi,* 530 U.S. at 477–79, 120 S.Ct. 2348, and in *Blakely,* 124 S.Ct. at 2536.

Within imprecise but increasingly scrutinized constitutional limits, then, the Supreme Court has said that legislatures are free to create crimes, and to define the elements of those crimes. *McMillan,* 477 U.S. at 84–91, 106 S.Ct. 2411; *Almendarez–Torres v. United States,* 523 U.S. 224, 228, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). This structural distinction provides an important analytic tool when trying to apply any determinate sentencing system. Courts may exercise their discretion (which may be limited under determinate sentencing schemes) in choosing an appropriate sentence within the range prescribed by the legislature. Which brings us to the central question raised by *Blakely:* Is there any real distinction between a the Washington guideline system and the federal guideline system? The question bears consideration.

## VII. STATUTORILY–ENACTED GUIDELINES VS. COMMISSION–ENACTED GUIDELINES

■ Professor Bibas, Judge Posner, Judge Cassell, and others have framed their conclusion that the federal guidelines must be unconstitutional as follows: If the legislature lacks the power to enact guidelines allowing for judicial factfinding, then it cannot delegate that power to an inferior commission. I think a better question in consideration of this structural problem of power is this: May the Sentencing Commission's prescribed sentencing ranges trump the statutory ranges established by

Congress? I think not, and I believe that view is substantiated by the majority opinion in *Blakely*.

It is hard to believe that Justice Scalia would think sentencing commission guidelines could trump statutes. In his concurring opinion to *Jones*, he stated, "[I]t is unconstitutional to remove from the jury the assessment of facts that alter the *congressionally prescribed range* of penalties to which a criminal defendant is exposed." 526 U.S. 227, 253, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (emphasis added). Moreover, Justice Scalia was the lone dissenter to the Court's decision upholding the constitutionality of the Sentencing Guidelines. *Mistretta*, 488 U.S. at 413–427, 109 S.Ct. 647 (Scalia, J., dissenting). He based his dissent on the constitutional authority the three branches possess to delegate their power to independent bodies. "Strictly speaking, there is *no* acceptable delegation of legislative power." *Id.* at 419, 109 S.Ct. 647 (emphasis in original). In other words, an inferior body may only enact legally-enforceable rules within the limits established by Congress. Certainly this means the Commission cannot prescribe sentencing ranges that exceed ranges established by Congress. It may also mean that the Commission lacks the constitutional authority to *lower* the maximum permissible range for any given crime. Most importantly, I believe it means that the Commission may not convert elements of a criminal offense into sentencing factors, nor does the Commission have the constitutional authority to define criminal conduct.

■ As a simple matter of linguistics, it is hard to believe Justice Scalia would refer to a "guideline range" created by the Federal Sentencing Commission as a "statutory maximum." The Washington sentencing guidelines *were* enacted by a legislative body. Because the legislature has the power to enact new laws—more specific laws—the Washington guideline ranges can trump the broad ranges established for the four felony classes.[4] I do not believe that automatically implies that the Federal Sentencing Commission has the same power as the Washington State Legislature. The distinction is critical for courts attempting to analogize from *Blakely* to the federal guidelines.

## VIII. RECONCILING *BLAKELY* AND THE FEDERAL GUIDELINES

■ With this understanding of *Blakely* and its predecessors, the Federal Guidelines can be applied in a constitutional manner. If the facts that adjust a base offense level upward are admitted to by the defendant, the Sixth Amendment is not offended. If the facts that adjust a base offense level upward are not elements of a separate crime, can be fairly inferred from the facts admitted to by the defendant, and do not raise the upper guideline range above the maximum sentence allowed by the statute establishing the offense, in my view a judge may find the facts by a preponderance of the evidence without running afoul of the Sixth Amendment. On the other hand, if the facts adjusting a base offense level upward are traditionally elements of a separate crime, and are not admitted to by the defendant, nor stated by the government in its offer of proof and undisputed by the defendant, nor fairly inferred from those admitted-to facts, I understand *Blakely* to hold that the Sixth

4. When a specific legislature enactment defines the upper range of sentencing for a specific offense, the general classification of offenses by type does not grant a judge the power to find facts that would increase the specific maximum sentenced without a jury first determining the essential facts that allow the judge to exercise her sentencing power.

Amendment requires those facts to be found by a jury.

■ What, then, is to be made of relevant conduct? Although the Supreme Court made no mention of it in *Blakely* or *Apprendi*, the Court has held that a sentencing judge is free to consider by a preponderance of evidence any information regarding the defendant's background, character and conduct in imposing sentence. *United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). *Watts* relied primarily upon 18 U.S.C. § 3661, which provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." It did not address the Sixth Amendment, and in fact relied heavily upon a Fifth Amendment double jeopardy case, *Witte v. United States*, 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), which held that the use of relevant conduct to enhance a sentence does not violate the Double Jeopardy Clause. Thus, it is fair to say that relevant conduct under the Guidelines, to the extent it includes elements of separate, uncharged or acquitted offenses, may offend the Sixth Amendment. But as Judge Easterbrook observes, "Just as opera stars often go on singing after being shot, so judicial opinions often survive what could be fatal blows." *Booker*, 375 F.3d at 516. The fate of relevant conduct rests with the Supreme Court alone. Prudence would dictate that extreme care be given to any enhancement of a base offense to make sure that the conduct considered does not involve a new element or a different offense.

Most adjustments to a defendant's base offense level present a far easier question. When a fact being relied upon to adjust a base offense level upward is a detail of the charged offense—such as an enhancement for being a leader or organizer, U.S.S.G. § 3B1.1(a)—in my view a sentencing judge has the authority to find that fact by a preponderance of the evidence. However, when a fact is an element of a separate, uncharged offense—such as obstruction of justice, § 3C1.1—then the Sixth Amendment requires that the defendant be given notice of the charge and the right to have a jury determine the elements of the offense beyond a reasonable doubt. *See Blakely*, 124 S.Ct. at 2540 n. 11. The example given by Justice Scalia is instructive:

> In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10–year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10–year sentence—and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

*Id.* at 2540. To comply with *Blakely* and the Constitution, the sentencing judge must determine whether a fact that is being used to adjust a base offense level upward is a detail of the crime charged, or whether it is an element of a separate, uncharged crime. By doing this analysis, a sentencing judge can apply *Blakely* constitutionally.[5]

---

5. Judge Posner suggests that the Guidelines may not be severable, a suggestion embraced by other courts as well. *See, e.g., Croxford*, 324 F.Supp.2d 1230 (2004). I see no reason why the Guidelines must stand or fall in one piece. Constitutionality has always been either facial or as applied; in this case, the Guidelines *may* be unconstitutional as applied (as recently acknowledged by Judge Cassell in *United States v. Thompson*, 324 F.Supp.2d

## IX. IMPOSING SENTENCE ON FRANK HANKINS

Frank Hankins pled guilty to conspiracy to distribute methamphetamine, a violation of 21 U.S.C. § 841(a)(1), § 846. He admitted to distributing more than 500 grams, which sets the statutory range at 10 years to life. 21 U.S.C. § 841(b)(1)(A)(viii). Once that range is established beyond a reasonable doubt, the sentencing court may find facts by a preponderance that will assist it in imposing a specific sentence.

Here, Hankins' base offense level is based upon his admission that he distributed at least 500 grams, and my finding by a preponderance of evidence that he distributed between 5 and 15 kilograms of methamphetamine. According to the Drug Quantity Table in U.S.S.G. § 2D1.1(c)(3), that means his base offense level is 36.

██ The Presentence Report recommended a two-level enhancement for possession of a dangerous weapon, U.S.S.G. § 2D1.1(b)(1). However, possession of a dangerous weapon is a separate crime; therefore, I believe the government must charge Hankins with a separate crime, and prove the elements of that crime to a jury beyond a reasonable doubt before Hankins is subject to the 2D1.1(b)(1) enhancement. I therefore decline to make that adjustment.

██ The PSR also recommends a two-level enhancement for because Hankins was an organizer, leader or manager of the conspiracy. This is a detail of Hankins' underlying offense; it is not an element of a separate crime. In my analysis I can make a finding of this fact by a preponderance of evidence without running afoul of the Sixth Amendment. Having heard the evidence, I find Hankins was a leader, and adjust his base offense level two levels upward. U.S.S.G. § 3B1.1(c)(a).

Because the defendant has demonstrated acceptance of responsibility for his conduct, I reduced the base offense level by two levels. Upon motion by the government pursuant to U.S.S.G. § 3E1.1(b), I decreased it one level for timely notification of the defendant's intent to plead guilty. This results in a base offense level of 35. With a criminal history category of III, the guideline range is 210–262 months.

In accordance with 18 U.S.C. § 3553(a)(2), and specifically to reflect the seriousness of Hankins' offense, to promote respect for the law, and provide just punishment for the offense, I sentenced Frank Daniel Hankins to 240 months in prison, to be followed by five years on supervised release. The remaining terms of his sentence, and conditions of supervised release, are outlined in the criminal judgment entered in this case.[6]

---

1273 (D.Utah 2004)) (applying the Guidelines because no judicial factfinding was required). In *Croxford,* Judge Cassell suggested that applying the guidelines "piecemeal" would be unfair to the government. *Id.* at 1245. However, fairness is a relative notion and any suggestion that judges can decide to ignore legislative schemes because of unfairness to one party or another to the litigation is fraught with structural problems.

**6.** The Defendant Frank Daniel Hankins was sentenced and this opinion was drafted prior to the Ninth Circuit's decision in United *States v. Ameline,* 376 F.3d 967 (9th Cir. Mont.).